ALBERT SMITH, Appellee, v. AMERICAN INSURANCE COMPANY, Appellant.

INSURANCE:   Cancellation of Policy—Noncontract Procedure.   When an insurance policy provides that the insurer may cancel the policy by giving the insured five days' *written* notice of such cancellation, an attempted cancellation by giving the insured an *oral* notice is quite abortive; and the insured will not be held to consent to such oral cancellation when his conduct and statement at the time the oral notice was given showed that he did not intend to yield any right possessed by him under the policy.

PLEADING:   Matters Specially Pleadable—Waiver Under Insurance Policy.   An insurance company which plants its defense to an action on the policy on a claim of cancellation which was not in accordance with contract provisions governing cancellation, may not take the benefit of testimony tending to show a waiver by the insured of a strict contract cancellation, *unless such waiver is specifically pleaded.*

*Appeal from Pocahontas District Court.*—D. F. COYLE, Judge.

APRIL 1, 1924.

ACTION upon a fire insurance policy.   The defense is that, prior to the time of the fire, the policy had been duly canceled. At the close of all the evidence, there was a directed verdict for the plaintiff, and the defendant appeals.—*Affirmed.*

*Price & Burnquist,* for appellant.

*Healy & Breen,* for appellee.

EVANS, J.—The controversy herein turns wholly upon the affirmative defense of cancellation.   Was the policy duly canceled?   The policy in question was for $3,500, and covered a

hotel at Fonda. It was issued on April 26, 1921, for the term of one year, the premium therefor being paid in full. On October 15, 1921, a fire loss occurred, which was duly adjusted by the payment of $1,259, and such amount was credited upon the policy, leaving still in force insurance for $2,241. On January 5, 1922, a complete fire loss occurred, the amount of such loss being in excess of the remnant of the policy. The claim of the defendant is that the policy was duly canceled on December 8th preceding. The following stipulation appears in the record:

"It is hereby agreed by the parties hereto that the defendant company, on the 26th day of April, 1921, signed, executed, and delivered Exhibit A to Albert Smith; that, in the month of October, 1921, the property described in said Exhibit A [the insurance policy] was damaged by fire; and that the defendant paid to the plaintiff the sum of $1,259. It is further agreed that the plaintiff, at the time of the execution and delivery of said Exhibit A, paid to the defendant company $63.35, the premium stipulated in said policy; that, in the month of January, 1922, the property described in said Exhibit A was totally destroyed by fire; that, on the 21st day of February, 1922, the defendant received from the plaintiff Exhibit B [Proof of Loss]; that, at all times since the 8th day of December, 1921, the defendant has denied any and all liability to this plaintiff under the terms of the policy marked Exhibit A, claiming that the same had been canceled, as of that date."

It appears without dispute that the company did enter a cancellation upon the policy on December 8th, and that it has been in possession of such policy ever since. It further appears, however, that it obtained the actual possession of such policy at the time of and in connection with the adjustment of the fire loss of October 15th, and that it never thereafter returned the same to the plaintiff. The field of the evidence pertaining to the negotiations between plaintiff and defendant pertaining to such policy extends up to December 28th. In view of the fact that the sole issue is that of cancellation, and that the defendant claims to have made the cancellation on December 8th, and purported to cancel the same as of such date on its records and upon the policy, it will simplify the discussion to confine our first

attention to the mutual status of the parties as of December 8th, and to ignore for the moment subsequent events between them. The agent of the company at Fonda was Jordan. It appears that, on and after November 2, 1921, the home office was contemplating the cancellation of the policy in question, and conducted a correspondence with their agent on the subject. The agent promptly notified the insured of the attitude of the home office. The insured was, without dispute, dissatisfied with such attitude, and beseeched Jordan with much importunity to intercede for him against such a course. This Jordan promised to do, and. did do. The progressive attitude of the home office is indicated in four successive letters to Jordan, as follows:

"Rockford, Ill. November 2, 1921.

"Mr. J. E. Jordan,
"Fonda, Iowa.
"Dear Sir:

"No. 3160—Albert Smith.

"As you know, we recently settled and paid a claim under this policy amounting to $1,259.05. According to Adjuster's report the origin of the fire was probably incendiary. We have not yet fully decided to ask you for the cancellation of this policy but will be pleased to have your advices relative to the present condition of the risk. For instance, we would like to know the name of the present tenant occupying the premises, as we presume the former tenant is no longer at the place. Please give us full information as to present conditions, and oblige,

"Yours truly,"

"Rockford, Ill. November 18, 1921.

"Mr. J. E. Jordan,
"Fonda, Iowa.
"Dear Sir:

"No. 3160—Albert Smith.

"We are in receipt of your letter of the 12th, relative to the above mentioned policy. After further consideration we have concluded to ask you to cancel, as we are rather of the opinion that the risk is not desirable, while the building is in

its present condition—unoccupied, on account of the recent fire. Please act promptly, and oblige,

"Yours truly,"

"Rockford, Ill. December 3, 1921.

"Mr. J. E. Jordan,

"Fonda, Iowa.

"Dear Sir:

"No. 3160—Albert Smith.

"We have considered your letter of the 21st very carefully regarding the condition of the property insured under this policy, but believe that we should not reconsider our request for cancellation. Will you kindly get up the policy and return to this office, and very much oblige,

"Yours truly,"

"Rockford, Ill. December 7, 1921.

"Mr. J. E. Jordan,

"Fonda, Iowa,

"Dear Sir:

"No. 3160—Albert Smith.

"While we have taken into consideration your various letters, including the one of the 5th inst., recommending this risk, as previously advised, we are of the opinion that the policy should be cancelled. It would seem that the building at the present time is practically vacant and out of repair. In this connection, the writer took up the matter with the State Agent McCormick when he was in the office and he also was of the opinion that the policy should be returned. Please do not delay the matter further but let us have the cancelled policy, thus obliging,

"Yours truly,"

After the receipt of the letter of December 7th, Jordan, who had had the policy in his possession since October 15th, noted a cancellation thereon, and sent it to the home office, with the request for pro-rata return premium. Before doing so, however, he orally advised the insured of the final peremptory attitude of the company. He also claims to have obtained thereby the consent of the insured to the proposed course. Concerning this conversation, he testified as follows:

"On the 8th day of December, 1921, I had received a letter from the company, and I told Albert Smith that they would not carry the risk any longer, and I showed him the letter. This was at the Go-Gas Oil Station in Fonda, Iowa, on the 8th or 9th of December, 1921. I think I received Exhibit No. 4 on the 8th or 9th of December. * * * The last talk I had with Mr. Smith about that policy prior to the 28th of December was on the 8th or 9th of December. * * * On the 8th or 9th of December, I showed him the letter, and told him the company positively refused to carry the risk any longer, and he said, 'let it go,' to send it in.''

The alleged consent of the insured is predicated upon the last sentence of the testimony above quoted. Though his evidence at this point was disputed by the insured, we must accept it as true, for the purpose of this appeal, in view of the directed verdict. However, in order to interpret the force and effect of the language attributed to the insured on this occasion, consideration must first be given to the provision of the policy concerning cancellation. Unfortunately, no copy of the policy or of any part thereof is incorporated in the record before us. However, the respective briefs of counsel and the opinion of the trial court disclose that the policy did contain a provision whereby the company could cancel the policy by pursuing an expressly defined course. This policy method of cancellation is set forth in the opinion of the trial court as follows:

"The policy provides that the defendant company may cancel the same at any time by giving five days' notice of such cancellation, either by registered letter direct to the insured at his last known address or by personal written notice."

The course thus indicated was not followed by the insurance company. No other notice was given to the insured than the conversation with Jordan testified to by him. There was a series of these conversations. None of them were peremptory except the last. At the time of these conversations, the policy was not in the possession of the insured, but in the possession of Jordan. It is undisputed that Jordan instructed the insured that, in the event of cancellation, he would be entitled to a written notice five days in advance of such cancellation, and that, until the expiration of five days after written notice, the policy

would continue in force. The policy was for a term of one year, and the full premium was paid in advance. Except for the provision for cancellation here referred to, the company could not have canceled it at all, before the expiration of the term. But by following the specified course, the company had a right to cancel. It needed no permission from the plaintiff to exercise such right. The importunities of the plaintiff through Jordan were directed against the announced intention of the company to avail itself of its right of cancellation under the policy. Jordan was not seeking to gain the plaintiff's consent to the cancellation. He was only advising him, first of the tentative intention of the company, and finally of the failure of his importunate intercession for the plaintiff, and of the fixed intention of the company to avail itself of its right of cancellation. All this is without dispute. The final word of the plaintiff, appearing in the last sentence of the testimony of Jordan quoted above, must be interpreted in the light of these undisputed facts. It meant nothing more than a yielding of his importunity. He had not been asked to yield any right which he had under the policy. He did not purport to yield any right under the policy. His only absolute right, irrevocable by the company, was to continue his policy in force for five days after receipt of written notice of cancellation. He was not asked to consent to a surrender of that right. On the contrary, Jordan testified to his own assurance to the plaintiff of the continuation of such right, even though the purpose of the company to cancel should prove inflexible. We think, therefore, that the words and conduct of the plaintiff up to December 8th will fairly bear no other interpretation than we here put upon it. The net result, therefore, of the negotiations between Jordan and the plaintiff was that plaintiff was orally notified on December 8th or 9th of the fixed purpose of the company to avail itself of its reserved right to cancel the policy, pursuant to its terms and conditions. It never did give the plaintiff *written notice* of the cancellation which it purported to make on December 8th. If it had given such written notice, the plaintiff would still have had five days of grace thereafter, before the termination of the life of the policy. Under the terms of the policy, the company could not deprive the plaintiff of his five days of grace after written notice of can-

cellation. To defer the time of giving the written notice was to defer the running of the five-day period. Without such written notice, it could only cancel by consent of the plaintiff. It never negotiated for such consent. The conduct and language of the plaintiff did not imply any consent to yield any right that he had. On the contrary, it was an importunity that the company should not avail itself of such rights as *it* had.

We deem it clear, therefore, that the purported cancellation made by the company on December 8th was not effective, for want of compliance with the terms of the policy.

This brings us to subsequent events, and to the question of the effect of subsequent events upon the rights of the parties. No further communication ensued between the plaintiff and Jordan until December 28th, on which date Jordan orally reported to the plaintiff the amount of the return premium due him, as $15.89. He claimed a personal offset thereon of $6.14, due to himself from the plaintiff on account for other matters. He delivered to the plaintiff his check for $9.75, which purported to be in full for the return premium on this policy. This was received and used by the plaintiff without protest or question. Much weight is put upon this circumstance by the appellant, and its full significance is utilized in argument. It is contended with much force that this circumstance was sufficient to make a case for the jury. The significance of this circumstance is that it tended to show waiver or ratification of the purported cancellation. The trial judge predicated his disposition of this feature of the case upon the state of the pleadings, in that no waiver was pleaded. As against this point, the appellant urges that there was a sufficient pleading of waiver in this: The plaintiff pleaded in his reply "that he never waived the requirement in said policy of the giving of said five-day written notice." By operation of law, the defendant had the benefit of a general denial of the affirmative allegation of the reply. It is argued, therefore, that this brought the alleged waiver into issue. We think that the construction put upon the pleadings by the trial court was tenable and proper. Even though the plaintiff in his reply pleaded a negative, he was not thereby required to prove it. The defendant had the election whether

*2. PLEADING: matters specially pleadable: waiver under insurance policy.*

to rely on a waiver or not. Such a defense was not available to it without pleading it. The defense pleaded was the cancellation of the policy. The only cancellation which the defendant purported to make was on December 8th. It is stipulated into the record that the company has always denied any liability on the policy after December 8th. Not only had it failed to give the written notice, but for twenty days it failed to return the unearned premium. If nothing more had been done after December 8th and until the date of the fire, there would be little room for debate as to the liability on the policy. What, therefore, was the legal effect of the transaction of December 28th? Assuming that it had a curative effect upon the previous failure of the company to accomplish a legal cancellation on December 8th, what was the mode of its operation or influence thereon? It changed no prior existing fact. It still remained true that no written notice had been given to the plaintiff. But though the company had failed on December 8th and thereafter to accomplish a legal cancellation, for want of written notice, it was still competent for the plaintiff to waive the defect of procedure, or to ratify the cancellation which the defendant purported to have made. This, in our judgment, was the sole function for which the transaction of December 28th was available to the defendant. The burden of the affirmative, either of waiver or of ratification, was upon the defendant, both to plead and to prove. The trial court was justified in construing defendant's pleadings most strongly against the pleader. We are required to construe them most favorably to the sustaining of the judgment below.

The order directing the verdict for the plaintiff must, accordingly, be sustained. The judgment is affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and VERMILION, JJ., concur.