HOME INSURANCE COMPANY, New York, Appellee, v. FIDELITY-PHENIX FIRE INSURANCE COMPANY, Appellant.

No. 44215.

MAY 3, 1938.

REHEARING DENIED SEPTEMBER 30, 1938.

Oliver P. Bennett and Prichard & Prichard, for appellee.

Schuyler & Hennessy, Paul H. Heineke, and A. R. Strong, for appellant.

DONEGAN, J.—All the evidence in this case is found in an agreed statement of facts, and the facts material for our consideration on this appeal are substantially as follows:

Both the plaintiff and the defendant are New York corporations and wrote fire insurance in the state of Iowa. W. B. Whiting conducted an insurance agency at Whiting in Monona county, Iowa, known as the Whiting Agency, which acted as a soliciting agent for both plaintiff and defendant. The insurance business of this agency was in charge of one R. C. Croker. In January 1933, through the Whiting Agency, the plaintiff and the defendant each wrote a policy of fire insurance on property belonging to Clyde N. Whiting, who was a cousin of W. B. Whiting. Each of these policies covered the period from January 1, 1933, to January 1, 1938, and in each of these policies the total coverage was $8,075 distributed over different items of property therein enumerated, with identical amounts as to each item. The only items involved in this case are the dwelling, household and kitchen furniture, and certain tools. Each policy carried $3,750 on the dwelling, $1,000 on household and kitchen furniture, and $100 on mowers and other machinery and tools, thus making a total of $7,500 on the dwelling, $2,000 on household and kitchen furniture, and $200 on mowers and other machinery and tools.

On February 17, 1934, S. J. Mak, a special agent of the farm department of the defendant, Fidelity-Phenix Fire Insurance Company, wrote the Whiting Agency that his company desired to be relieved from liability in the farm department, and asked the agency to "take up our policies for pro rata cancellation at once or we will be willing to give you until March 15th to rewrite your business in another company." The letter also contained the statement that the Great American Fire Insurance Company would be willing to take over the liability of the defendant company by rewriting the insurance, "but if you

**38**

would prefer to have us cancel this business by registered mail, we will do so." Shortly after the receipt of this letter, Croker talker to Clyde N. Whiting and advised him of the request of the defendant company. About March 1, 1934, a Mr. Fields, who was a representative of the plaintiff insurance company, had a conversation with Croker and Clyde N. Whiting at the Whiting Agency. In this conversation Croker told Fields that the defendant company had directed the Whiting Agency to terminate all its liability on farm policies written through this agency by the 15th of March, 1934. Whiting said that he was anxious to get all his insurance in one company, and would prefer to have it in the plaintiff company. Fields replied that he would approve increasing the insurance so that all of the insurance carried by Whiting would be in the plaintiff company under one policy, but that he did not care to recommend that his company carry $7,500 insurance on the dwelling, and suggested that, as one Rathbun, who was assistant manager of the farm department of the plaintiff company, with office in Chicago, had charge of the farm business written in Iowa, had formerly traveled in Iowa, and was acquainted with the Whiting home, Whiting should write to Rathbun about the amount of insurance on the dwelling. On March 1, 1934, Whiting wrote Rathbun and told him that Fields wanted to cut the insurance on the Whiting home to $6,000, but that he, Whiting, did not consider that quite enough. On March 6, 1934, Rathbun answered Whiting's letter telling him that the plaintiff company had adopted a policy of writing less insurance on farm dwellings than it had formerly written, and that, "if $7,000 would make you feel better, possibly we could grant the same." On March 12th Whiting replied to this letter of Rathbun's and, after stating that he had seen W. B. (W. B. Whiting, owner of the Whiting Agency) the night before and that W. B. "wanted to fix it at $7,500.00 & send it in and I said to wait until I had written to you again & had a reply," he further stated he thought $7,500 little enough on the house and hoped Rathbun would give him that much. In this letter Whiting further stated: "I only have until the 15th with the Fidelity-Phenix but I have had no letter of any kind from them, so I guess I'll have insurance as long as I don't hear from them." On March 14, 1934, Rathbun wrote Whiting in answer to Whiting's letter of the 12th inst. and said: "As to the insurance on your dwelling

house, we will advise Special Agent Cathcart of Des Moines, Iowa, that we will look favorably upon the writing of $7,500.00 on the same. You state that you would like to have our prompt advice as to the amount of insurance we will carry on your dwelling for the reason that you only have until the 15th of this month with the Fidelity-Phenix. Therefore, we will consider ourselves bound for the full amount beginning as of March 15th, 1934. I am sending a copy of this letter to W. B. and he can now complete your application and forward it to this office."

The agreed statement of facts states that this letter was written by Rathbun "in his official capacity of Assistant Manager of the Farm Department of the Home Insurance Company, New York," and "that he had authority to bind the company in accordance with the terms of the letter." On March 17, 1934, Clyde N. Whiting took this letter to the Whiting Agency, and the Whiting Agency, through Croker, thereupon wrote a letter to the Chicago office of the defendant, Fidelity-Phenix Fire Insurance Company, which said:

"Will you please cancel the above numbered policy by registered mail cancellation as of March 15, 1934."

On the same occasion, the Whiting Agency, through Croker, wrote a letter to the Chicago office of the plaintiff, Home Insurance Company, attention of Mr. Rathbun, which stated that the Whiting Agency had copies of Rathbun's letter to C. N. Whiting "in which you assumed the responsibility for the other half of the insurance on his buildings" and asked, "Will you please issue an endorsement to attach to policy C. I. 57756 doubling the amount of liability under that policy on all items." These last two letters above referred to were received at the respective Chicago offices of the plaintiff company and the defendant company on March 19, 1934. On Sunday, March 18, 1934, about 5:45 p. m., after both letters had been mailed by the Whiting Agency, but before they had been received at the Chicago offices of the plaintiff and defendant companies respectively, a fire occurred on the Whiting premises resulting in loss and damage to the dwelling, to kitchen furniture, and to tools.

On the following day, March 19, 1934, the Whiting Agency wrote to the defendant company, as follows:

"On Saturday Mr. Whiting was in the office and applied for an endorsement in the Home Insurance Company to take up

the entire insurance on his buildings and personal effects on Sec. 29 and 30-85-45, and we notified the Fidelity-Phenix to send cancellation of their policy on this same set of buildings, by registered mail.

"Sunday night at approximately 5 P. M. a fire completely destroyed the house and did $1,000 worth of damage to the furniture therein, and, because the policy was in a state of transfer from the Fidelity-Phenix, we want you both to have complete information about the transfer.''

Carbon copies of this letter were also mailed to the plaintiff company and to Clyde N. Whiting. On March 21st the plaintiff company wrote W. B. Whiting of the Whiting Agency acknowledging receipt of the letter containing the information in regard to the fire, and stating:

"Our agreement as set forth in letter of March 14th, to Mr. Whiting to increase the insurance on the dwelling to a total of $7,500.00 and on the household goods to $2,000.00 was made on the understanding that there would be no other insurance and that our additional liability would not attach prior to the cancellation of the Fidelity-Phenix policy.''

On March 29, 1934, the defendant company wrote Clyde N. Whiting a letter stating that, under date of March 17th it was advised by the Whiting Agency to cancel the policy on the Clyde Whiting property; that it had ascertained that on or about March 10, 1934, a request had been made to the Home Insurance Company to assume the entire liability which prior to that time had been insured in the Home Insurance Company and Fidelity-Phenix; that it had determined further that on March 14th the Home Insurance Company became bound for the full amount beginning as of March 15, 1934; and that, its liability having terminated as of that date, it enclosed a check for the unearned premium. On April 17, 1934, at the instance and request of the plaintiff company, Clyde N. Whiting wrote a letter to the defendant company, enclosing a sworn statement of proof of loss, demanded payment of $4,446.75 as its proportion of the loss, and returned the check which the defendant company had sent to him for the unearned premium. On April 24th the plaintiff company issued a separate policy to Clyde N. Whiting covering the same items and in the same amounts as

the policy of the defendant company, and containing the statement that it would not be valid until countersigned by the duly authorized agent of the company at Whiting, Iowa. This policy was countersigned at Whiting, Iowa, on the 24th day of April, 1934, by W. B. Whiting, agent, and insured Clyde N. Whiting against loss, as provided in the policy, from March 15, 1934, at noon, to March 15, 1939, at noon. Following the issuance of this policy the plaintiff company issued two drafts, one in payment of claim for loss under its original policy, and the other in payment of claim for loss under the policy issued by it on April 24, 1934. At the time the draft in payment of the claim for loss under the policy dated April 24, 1934, was issued, or shortly thereafter, the plaintiff company procured from Clyde N. Whiting a written assignment of his claim against the defendant company for loss under its policy, and on February 21, 1935, the plaintiff company instituted this action against the defendant company to recover the amount alleged to be due under said claim. A jury was waived and the case tried to the court, which found in favor of the plaintiff and entered judgment against the defendant for the full sum of $4,446.75, with interest from May 27, 1934. From this judgment the defendant appeals.

We are met at the outset with the contention of the plaintiff-appellee that the appellant's brief and argument has failed to set out properly the errors relied upon for reversal, and that it, therefore, presents nothing for review. The assignment of errors in the appellant's brief and argument is under a heading entitled, ''Errors Relied upon for Reversal,'' and is as follows:

''The court erred in entering judgment for the plaintiff and against the defendant.

''The entry of judgment in favor of plaintiff and against the defendant was against the manifest weight of the evidence.

''The entry of judgment in favor of plaintiff and against the defendant was contrary to the law applicable to the facts.''

Appellee contends that this is an omnibus assignment of errors, which does not comply with Rule 30 of this court, and that it cannot be considered by the court. It must be admitted that this assignment of errors is not a strict compliance with Rule 30 of this court. As we have frequently said, how-

ever, our rules were not intended to create a trap for the unwary, but were established for the purpose of facilitating the review of cases in this court; and, if the judgment or ruling of a trial court, of which an appellant complains, is pointed out and the reasons for complaint stated with sufficient clearness to enable this court and the opposing party to understand the exact proposition upon which a reversal is asked, there is no disposition on the part of the court to refuse to consider the error alleged, because it is not alleged in strict conformity with our rule. Neither the appellee nor the court reasonably can be said to have been confused or put to any inconvenience because of the form in which the errors were assigned in this case. There is no dispute whatever as to the facts and, as it seems to be conceded by both parties that the real question involved is whether, under the law, as applied to these facts, the policy of insurance issued by the defendant company had been cancelled prior to the fire on March 19, 1934, or was still in effect, it would seem to be exacting a harsh penalty for the failure to comply strictly with our rule, if we should refuse to consider this appeal upon its merits.

As we have previously said, the ultimate proposition to be determined in this case is, had the policy which the appellant issued in January, 1933, upon the property of Whiting, been cancelled prior to the fire on March 18, 1934, or was such policy still in effect at that time? This policy as written covered the period from January 1, 1933, to January 1, 1938, and, unless cancelled, it was still in effect on March 18, 1934. The burden of proving cancellation was on the defendant-appellant. The policy was in compliance with the Iowa standard fire insurance policy and contained this provision:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation either by registered letter directed to the insured at his last known address, or by personal written notice."

It is conceded that the policy was not cancelled under this provision. It is claimed by the appellant, however, that the policy was cancelled as of March 15, 1934, by mutual consent and agreement of the defendant company and Clyde N. Whiting. That an insurance policy may be cancelled by mutual consent of the parties, without resorting to the method provided

in the policy itself, is well established. Hopkins v. Phoenix Insurance Co., 78 Iowa 344, 43 N. W. 197; Waterloo Lumber Co. v. Des Moines Ins. Co., 150 Iowa 607, 130 N. W. 147; Warren v. Franklin Fire Ins. Co., 161 Iowa 440, 143 N. W. 554, L. R. A. 1918E, 477; Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa 1133, 184 N. W. 756; Wall v. Bankers Life Co. of Des Moines, 208 Iowa 1053, 223 N. W. 257.

As this case was tried to the court upon an agreed statement of facts, the finding of the court, if there be sufficient evidence to support it, must be given the effect of the verdict of a jury. Therefore, before this court can set aside the trial court's finding in favor of the plaintiff, we must find that there was insufficient evidence to support it. It is the contention of the appellant that the evidence clearly shows an understanding and intention on the part of all of the parties that the insured was not to have more insurance upon his property at any time than the total amount carried thereon by the original policies of the plaintiff and defendant companies; that the letter of the defendant company to the Whiting Agency in regard to obtaining a cancellation of all policies on farm property clearly shows that the defendant company intended that all such policies should be cancelled by March 15, and that, if any of the persons insured did not voluntarily procure other insurance and thus mutually cancel their policies in the defendant company, the defendant would, if so advised by the Whiting Agency, cancel such policies by the written notice sent by registered mail, as provided in the policy; that the conduct of the insured, Whiting, shows that he did not stand on his right to have his policy cancelled by registered written notice; that he took steps to procure insurance in the plaintiff company in place of the insurance on his property covered by the defendant company's policy; that he understood that this new insurance should be procured by March 15, in compliance with the request of the defendant company; that the plaintiff company was apprised and clearly understood from Whiting's conversation with its representative, Fields, about March 1, and from Whiting's letters of March 1 and March 12, that the insured desired the additional insurance in that company to become effective by March 15; that the plaintiff company's letter of March 14 to the insured, Whiting, clearly shows an understanding and agreement on the part of plaintiff company that it would be bound, as of

March 15, for the full amount of insurance covered by defendant company's policy, which was to be cancelled as of that date; and that the policy issued by the plaintiff company, after the fire, in expressly providing that the term of such policy was from March 15, 1934, to March 15, 1939, was in compliance with Whiting's understanding that his insurance in the defendant company was to be cancelled as of March 15, 1934, and in fulfillment of Rathbun's statement, in his letter of March 14, that the plaintiff company would be bound ''for the full amount beginning as of March 15, 1934.''

The appellee contends that, under the facts presented in the agreed statement, the trial court properly could and did find that there was no mutual cancellation of the defendant's policy which became effective as of March 15. Appellee argues that the letter of the defendant company to the Whiting Agency, in regard to the cancellation of defendant's policies on farm property, neither directed nor authorized that agency to cancel the defendant's policy on the Whiting property by written registered notice, in accordance with the provision of the policy itself; that the language of this letter indicates that, if the persons insured under the policies which the defendant desired to cancel were unwilling to cancel their policies without written registered notice, the defendant company would give such notice; that there was no agreement or understanding between the Whiting Agency and the insured, Whiting, that he would voluntarily surrender his policy for cancellation as of March 15; that, on the contrary, Whiting's letter of March 12 to Rathbun clearly indicates that he understood that, while the defendant company desired cancellation by March 15, it had not written to or served any notice on him that his insurance would be cancelled on that date, and he thought he would have insurance as long as he did not hear from them; that this letter shows that Whiting did not intend or voluntarily consent to a cancellation of his policy, but understood it would be cancelled by the defendant company by written notice; that Rathbun's letter of March 14, in which he stated that the defendant company would consider itself bound for the full amount beginning March 15, was based on his mistaken understanding that the defendant's policy was to be cancelled as of March 15, and there was no such understanding or agreement between the defendant company and Whiting; that, notwithstanding Rathbun's mistaken under-

standing that the cancellation of defendant's policy would become effective as of March 15, neither the insured, Whiting, nor the Whiting Agency understood that defendant's policy was cancelled on that date, because, when Whiting took this letter to the agency on March 17, Croker, for the agency, wrote the plaintiff company to endorse the additional insurance on its original policy and wrote the defendant company to cancel its policy "by registered mail cancellation as of March 15, 1934"; that this letter *was not a request of the insured, Whiting, to cancel his insurance,* which, under the express provision of the policy, would cancel it as of March 15, but was a statement to defendant company by its agent, the Whiting Agency, that Whiting's policy was to be cancelled by the defendant company by registered mail cancellation, in accordance with the provision of the policy; that, as the cancellation was to be by defendant company by registered mail, in accordance with the provision of the policy, such cancellation could not be effective as of March 15, but could only be effected by the company *"giving five days' notice of such cancellation by registered letter directed to the insured at his last known address"* [italics supplied]; and that, at most, even if the Whiting Agency had the authority to bind the insured and waive any part of the provision of the policy, of which there is no evidence, the statement contained in its letter could amount to no more than a waiver of Whiting's right to the full five days notice from the date such notice was actually received by him with a return of the unearned premium, and a consent that the notice itself should be dated and considered as given on March 15, and the five days commence to run as of that date.

While the proposition is not without difficulty, we do not think it can be said, as a matter of law, that, under the facts in evidence, as shown by the agreed statement, the trial court had no alternative but to accept defendant company's view of the evidence and hold that its policy was cancelled by mutual consent as of March 15. No express statement or agreement was made by the insured, Whiting, to the defendant company or to the Whiting Agency, or any other agent of the defendant company, that would constitute an express consent or agreement that its policy was to be cancelled as of March 15. While Whiting's letter of March 12 to Rathbun states, "I only have until the 15th with the Fidelity-Phenix", it does not compel a finding

that he had an agreement or understanding with the defendant company that its policy on his property was to be cancelled as of that date, because, immediately following this statement and as a part of the same sentence, he says, "but I have had no letter of any kind from them, so I guess I'll have insurance as long as I don't hear from them." We do not think it necessarily follows that, because Rathbun understood that defendant's policy would be cancelled as of March 15, and the plaintiff company become liable on that date, the defendant's policy was actually cancelled on March 15. The cancellation of its policy, upon which the defendant company relies, is a cancellation by mutual consent, not by notice. This mutual consent would have to be a consent by both the defendant company and the insured, Whiting, and could not be brought about by Rathbun's understanding that it would be effective on a particular date. Nor do we think that the issuance by the plaintiff company of a new policy on April 24, 1934, insuring Whiting's property from March 15, 1934, at noon, to March 15, 1939, at noon, conclusively establishes the fact that defendant's policy was cancelled on March 15, 1934. Immediately on receiving notice of the fire, on March 21, 1934, the plaintiff company wrote W. B. Whiting, the proprietor of the agency, clearly stating its position, that the additional insurance it agreed to carry on Clyde N. Whiting's property was not to become effective until the defendant company's policy was cancelled. Although the defendant company received notice of the fire on the same day, March 21, 1934, it made no response to this notice until one week later when, in its letter of March 29th, it took the position that, because of Rathbun's letter of March 14, the plaintiff company became bound for the full amount of the insurance and the defendant's policy was cancelled as of March 15, 1934. On April 17, 1934, the insured, Clyde N. Whiting, at the instance and request of the plaintiff company wrote to the defendant company enclosing sworn proofs of loss under its policy. The plaintiff company's new policy was issued on April 24, 1934. On May 4, 1934, plaintiff company wrote Whiting, sent him a draft in payment of his claim under this new policy, and enclosed in the same envelope with the letter and draft the agreement and assignment by which the insured, Whiting, assigned his claim against the defendant company. This agreement and assignment states that Whiting's claim under the new policy "is paid under a denial of liability

and in order to avoid litigation.'' When all the facts and circumstances following the fire are considered, including the issuance of the new policy and payment of Whiting's claim thereunder, we are unable to find therein any change in the attitude taken by the plaintiff company at the time it first learned of the fire, and we think that the things done by it thereafter are not only not inconsistent with that attitude, but that they show an effort on its part to protect the insured from the delay and inconvenience and expense of litigation, while at the same time denying its liability and insisting on the liability of the defendant.

█ While it may be conceded that, if the trial court had found that the defendant's policy was cancelled as of March 15, 1934, there would be sufficient in the evidence to support such finding, we do not think it can be said that the evidence was such that no other inference could be derived therefrom. On the contrary, we think the evidence was such that the trial court could find therefrom that the insured, Whiting, never understood or intended that the defendant's policy was to be cancelled as of March 15, 1934; that it was his understanding that this policy would not be cancelled until he received notice of cancellation from the defendant company, in accordance with the provision of the policy; and that the additional insurance in the plaintiff company, to take the place of the insurance held by him in the defendant company, would not become effective until he had received such notice of cancellation from the defendant company. It is well settled that, where different inferences reasonably may be drawn from undisputed facts and circumstances, the drawing of any one of such reasonable inferences is within the province of the jury, or of the court when a jury is waived, and that a finding thus made by either a jury or a court is final and cannot be disturbed upon appeal. As said in 5 Corpus Juris Secundum, Appeal and Error, §1656, p. 698, in discussing the review by appellate courts of the finding of trial courts on undisputed facts:

''The function of the appellate court in this connection is not, however, to determine whether or not it would have drawn the same conclusion as the trial court but simply to ascertain whether or not the conclusions of the latter court are so illogically drawn as to be wholly unjustifiable; and the conclusions

will not be disturbed when they are supported by the subordinate or subsidiary facts, or are legally inferable therefrom."

We are satisfied that the trial court could reasonably find from the evidence in this case that the defendant company's policy was not cancelled by mutual consent of the parties on the 15th day of March, 1934, and it follows therefrom that the judgment of the trial court must be, and it is hereby, affirmed.— Affirmed.

STIGER, C. J., and ANDERSON, KINTZINGER, MILLER, RICHARDS, HAMILTON, and SAGER, JJ., concur.