## 16160

DILL *et al. v.* LUMBERMEN'S MUT. INS. CO.
(50 S. E. (2d) 923)

*Mr. Stephen Nettles,* of Greenville, *for Appellant,*

*Mr. Benj. A. Bolt,* of Greenville, *for Respondents,*

*Mr. Stephen Nettles,* of Greenville, *for Appellant,* in reply.

December 17, 1948.

FISHBURNE, Justice.

On January 22, 1946, The Lumbermen's Mutual Insurance Company issued to Dill & Burns, a copartnership operating a business in Greenville as used car dealers, its policy insuring them against loss and damage from collision and other specified hazards to automobiles. The policy covered not only the automobiles at Greenville, but included those being driven over the roads to the place of business of Dill & Burns in Greenville.

The insurance was for the actual cash value of the cars, less $50.00 deductible on each car, with a maximum liability of $4,000.00. Dill & Burns were required to make and maintain a monthly deposit with the insurance company of $100-.00 on account of the premium, which deposit had not been exhausted at the time of the loss involved in this litigation.

On April 26, 1946, two used cars which had been purchased in Baltimore by Dill & Burns, were damaged in a collision while being driven to Greenville for resale. Following the collision, the plaintiffs brought this action against the defendant for the damages sustained under the insurance policy. The insurance company denied liability on the ground that the plaintiffs had voluntarily surrendered the policy for cancellation prior to the loss. By consent of the parties, the case was submitted to the trial court without a jury, and the court found that the policy had not been cancelled by mutual consent, and that it was still in effect at the time of the collision. Accordingly, judgment was entered against the insurance company in favor of the plaintiffs for the amount of $1,200.54, which the court found to be the amount of the loss and damage sustained, with interest thereon, less $50.00 deductible on one car. The matter is now before us on appeal by the insurance company.

There is no real dispute as to the facts. The policy contained this provision:

"13. Cancellation—This policy may be cancelled by the insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the company by mailing to the assured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such

written notice either by the insured or by the company shall be equivalent to mailing.

"If the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed *pro rata*. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the insured."

The policy was issued to the respondents, Dill & Burns, by appellant through its local agent at Greenville, R. V Chandler, Jr., who did business in the name of Chandler Insurance Agency. Under date April 8, 1946, Chandler wrote the following letter to Mr. Burns:

"Dear Mr. Burns:

"Re Dill & Burns Used Cars Policy No. LA 35692

"We have been requested by the company to pick up the above captioned policy for cancellation. Please do not think that they are asking cancellation of your individual policy because I can assure you that all policies of this type are having to be cancelled. It does not in any way throw a reflection on you or Mr. Dill, but it is just a type risk the company has learned through experience is unprofitable.

"As quickly as you can send us the policy we will forward it on to the company and they in turn will advise us the amount of your earned premium. We can then give you our check for the unearned portion of your $100.00 paid us.

"We will appreciate greatly your giving this matter your prompt attention, and sincerely hope that this will not inconvenience you in any way."

·Mr. Burns received the letter in due course, but did nothing in regard to it. Some days after its receipt, Mr. Chandler telephoned him and requested that he bring the policy to the office. Mr. Burns states that in reply to this request, "I told him I would bring it up there and talk to him about it." Thereafter, on April 19th, or a day or so later, Burns went to Chandler's office in Greenville and left the policy with his secretary, who happened to be Mr. Chandler's wife. He stated that he did not deliver it to her for cancellation; that he did not wish to cancel the policy. When asked on cross examination what he said to her with reference to the matter, he replied: "I asked her was R. V. (Mr. Chandler) there when I went in, and she said no, that he would be there after a while. I told her I brought this policy in and want to leave it with you, and I want to see R. V. I wanted to keep the policy if I could."

He told the secretary that he wanted to see "R. V." He stated further on cross examination: "I didn't want to let the policy go  *  *  *." The witness said that he knew the insurance company was going to cancel the policy, and "I wanted to see him (R. V.) about more insurance if he was going to cancel it, because we were bringing those cars from up the country, and I wanted them insured."

The other partner, Mr. Dill, testified that upon receipt of the letter referred to from the defendant, Mr. Chandler, he and Mr. Burns, his partner, had discussed the matter and that he was opposed to cancelling and surrendering their insurance policy.

In his testimony, Mr. Chandler said that after writing the letter to Mr. Burns on April 8th with reference to the proposesd cancellation of the policy, he received another letter from the general agent, in consequence of which he telephoned Mr. Burns and asked him to bring the policy to the office. He could not remember the exact conversation which took place between him and Mr. Burns, but he made no

specific denial of Burns' statement that in this conversation the latter said, "I told him I would bring it up there and talk to him about it."

The two cars were wrecked in a collision while en route to Greenville on April 26, 1946. On the following day the loss and damage were reported by Burns to Chandler, the local agent, whereupon Chandler told him that the policy had been cancelled. On April 29th, Chandler mailed to Dill & Burns a check for the unearned portion of the premium, amounting to $75.04; and on May 1st, respondents, who promptly sought legal advice, had their attorney return the check to Chandler.

Mr. Chandler testified that he cancelled the policy himself, on April 19th, the day it was delivered to his office by Mr. Burns. There is a home office notation on the face of the policy indicating cancellation by appellant as of April 23rd, although it was not received at the home office at Mansfield, Ohio, until the 25th.

The question we have to decide is whether, under these circumstances, the policy had been effectively cancelled by mutual consent, without reference to the cancellation provisions contained therein; or whether the policy was in full force and effect at the time of the accident.

Policy provisions giving either the insured or the insurer the right to cancel the contract upon notice to the other are frequently embodied in liability insurance, fire insurance and certain other types of policies. 29 Am. Jur., Insurance, Sec. 275, Page 257. They have been the subject of much litigation, consequently the principles governing their interpretation and application are well settled. Under such provisions, either party has the right by complying with the terms of the policy, to terminate the contract. The consent of the other party is not necessary to effect a cancellation.

However, the method of cancellation provided for in the insurance policy is not necessarily exclusive so as to preclude an effective cancellation by mutual agreement without compliance with the procedure so provided; and the requirement of notice as a condition precedent to cancellation does not apply to a termination by mutual consent independently of the provisions of the policy. 45 C. J. S., Insurance, § 444b, page 71.

Whether cancellation by mutual agreement has been effected depends on the intention of the parties as evidenced by their acts, conduct and words, taken in connection with the attendant circumstances. There must be a meeting of minds, or mutual assent, to constitute a valid cancellation, and each party must act with knowledge of the material facts. If both parties agree that a policy is to be cancelled, transactions with reference thereto are to be construed reasonably and fairly and in accordance with the evident understanding of the parties at the time. Incomplete negotiations looking toward a contract for cancellation do not effect cancellation. *Interstate Life & Accident Co. v. Jackson,* 71 Ga. App. 85, 30 S. E. (2d) 208. And the burden of proving that there has been a cancellation of a policy rests on the party asserting it. 45 C. J. S., Insurance, § 461, page 129.

The authorities are well nigh unanimous to the effect that the mere physical surrender of the policy by the insured standing alone does not terminte the contract. Such surrender must be voluntary and unconditional. The intent to cancel must be manifested, and whether there is such a manifestation is to be gathered from all the facts and circumstances connected with the physical act of surrender. Ordinarily, the question is one for determination by the jury. 29 Am. Jur., Insurance, Sec. 296, page 271.

There are many cases illustrating the principle involved, dealing with mutual rescission of insurance policies.

In *Wicks Bros. v. Scottish Union & Nat. Ins. Co.,* 107 Wis. 606, 83 N. W. 781, it was held that there was no agreement to cancel independently of the terms of the policy, under the following circumstances: A notice was given by the company to a representative of the insured of an intention to cancel, and a request for the return of the policy was made. There was no suggestion, as in the case at bar, that there was to be any departure from the policy requirements with reference to notice under the policy provisions, and, as here, the risk was an undesirable one, and it was difficult to secure insurance on the property. The court held that under the circumstances, it was quite reasonable to assume that the intention of the insured's representative in returning the policy was that it should be held for cancellation under the terms of the policy; and there was nothing to indicate an intention to surrender it for immediate cancellation.

Also in *Smith v. American Ins. Co.,* 197 Iowa 761, 198 N. W. 48, it was held that a cancellation by mutual consent of a fire insurance policy providing for cancellation by insurer upon giving five days written notice was not effected under the following circumstances. The insurer, who had the policy in its possession from the time of adjusting a former loss thereunder, wrote several letters indicating its intention to cancel, as a result of which the insured besought the local agent of the insurer to intercede for him against such a course. Upon being informed that the insurance company positively refused to carry the risk any longer, the insured told the local agent to let it go and to send it in (for cancellation).

There are many cases which illustrate various phases of the question under consideration collected in the Annotation appearing in 152 A. L. R., 95-143. Those bearing upon the question of cancellation by mutual consent and of waiver are ll to the point that such an agreement is not to be lightly inferred from circumstances equally consistent with the absence

of such consent; but once fairly established, the policy holder is bound thereby.

When we consider the evidence in the present case, it seems to us that the conclusion is inescapable that there was no meeting of the minds of the parties upon the proposition that the policy should be immediately cancelled. All of the evidence on the part of the respondents shows that they wished the policy of insurance to remain in force. When the local agent, Mr. Chandler, hearing nothing from Mr. Burns in response to the letter which he had written him on April 8th, stating that the company wished to cancel the policy, telephoned him, he was told by Burns that he would bring the policy to the office, but wished to talk with him about it. And later, when he delivered the policy at the office of Mr. Chandler to his secretary, there is no suggestion by him that he was surrendering it for cancellation. On the contrary, he said he left the policy with the secretary and told her that he wished to see Mr. Chandler. Throughout the testimony of Mr. Burns and his partner, Mr. Dill, they stated that they did not wish the policy cancelled.

This court is without jurisdiction to review factual findings in this, a law case, if the evidence is reasonably susceptible to the inferences embraced in the judgment of the trial court. As stated, we think there was ample evidence to warrant the judgment reached by the county court.

Appellant contends that the trial judge permitted in evidence, over objection, certain testimony of respondents as to their secret intent in delivering the policy to appellant's agent on April 19, 1946. But the greater part of this testimony, said to be inadmissible, was brought out by appellant on cross examination. For instance, the witness Burns stated upon cross examination, "I didn't want to cancel the policy." And again, "I brought this policy in and want to leave it with you, and I want to see R. V. I wanted to keep the pol-

icy if I could * * *. I wanted insurance on my cars."
Also, "I wanted to see him about more insurance if he was
going to cancel it, because we were bringing those cars from
up the country and I wanted them insured."

Substantially, the only testimony elicited on re-direct ex-
amination of the witness Burns, which was admitted over
objection, was almost a repetition of that already brought out
on the cross examination. He was asked, "What did you
want to see him (R. V.) about?" He answered, "Well, I
wanted to see R. V. about this policy, if he was going to
cancel it, see whether he was going to cancel it; if it was
going to cost more I didn't mind paying more, or get an-
other policy before letting this one go."

But aside from this the testimony was admissible.
We are not dealing here with any question relating
to the interpretation of a completed contract nor with
any question as to what one of the parties had in contempla-
tion about its effect. It is well settled that whenever the mo-
tive, belief or intention of any person is a material fact to
be proved under the issues of the case, it is competent to
prove it by the direct testimony of such person regardless of
whether or not he is a party to the suit. *McGhee v. Wells,*
57 S. C. 280, 35 S. E. 529, 76 Am. St. Rep. 567; 20 Am.
Jur., Evidence, Sec. 338, Page 314; 31 C. J. S., Evidence,
§ 178, Page 880; Jones on Evidence, Sec. Ed., Sec. 170,
Page 191.

Appellant contends that the judgment is excessive, in
that under the terms of the policy $50.00 was de-
ductible as to each car, instead of only $50.00 on the
two cars. The policy provides that each car was insured
against loss and damage for its actual cash value less $50.00
deductible. And Paragraph 10 of the conditions of the pol-
icy states that when two or more cars are covered by the
policy, "the terms of this policy shall apply separately to
each." We think this contention must be sustained. A total

of $100.00 was deductible from the total amount of the damage. Respondents seek to justify the deduction of $50.00 only because the cars were attached together and towed one behind the other, and that both were damaged at the same time in one collision. We do not think this constitutes a differentiating factor.

The respondents' damage resulting from the collision was established at $1,100.00; deducting $100.00 from this amount leaves $1,000.00. They are entitled to judgment for this amount with interest from May 1, 1946, at the legal rate.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.

Judgment affirmed as modified.