Owen T. BARRY, II, Individually and as next friend of Summer Barry, Appellee,

v.

MILBANK MUTUAL INSURANCE COMPANY, Appellant.

No. 54510.

Supreme Court of Iowa.

June 17, 1971.

John D. Randall, Cedar Rapids, for appellant.

Adam A. Kreuter, Cedar Rapids, for appellee.

REYNOLDSON, Justice.

Court-tried law action grounded on § 516.1, Code, 1971, brought by judgment creditor of insureds against liability insurance carrier. Defendant insurer appeals from adverse judgment. We affirm.

Insofar as relevant here, § 516.1 provides that all liability policies shall contain a provision that in event an execution on a judgment against an insured is returned unsatisfied in litigation by an injured person, the judgment creditor shall have the same right of action against the insurer as the insured would have had after paying the judgment.

Defendant's assignments of error pose two questions for determination. Was its auto policy cancelled by insured's delivery of the contract to its agent, prior to plaintiff's injury? Was issuance of the execution and its return unsatisfied, required by § 516.1, such a "frivolous nullity" as to deny plaintiff any rights under this statute?

The policy involved was issued by defendant to Marjorie B. Bennett, who lived at Mt. Sterling, Iowa. She procured the insurance through McCoy Insurance Agency at Keosauqua, Iowa. This contract was dated May 16, 1967 and by its terms expired at 12:01 A.M., August 16, 1967. Paragraph 16 under "Conditions" provided:

"*Cancellation.* This policy may be cancelled by the insured named in Item 1 of

the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. * * *"

Mrs. Bennett acquired the insurance when she purchased a car for her adult son, Philip E. Mellott, who lived and worked in Cedar Rapids, Iowa.

On June 28, 1967, McCoy Agency received a letter from defendant, reciting certain traffic violations and an alleged prior accident involving Mellott. There followed this instruction:

"In view of this it is necessary for you to secure the policy and return it to us by July 7. If we have not received the policy by that date we shall issue a direct notice of cancellation. * * *"

Madelyn Davis, office secretary and bookkeeper for McCoy, responding to this direction, telephoned Mrs. Bennett on June 29, 1967. After informing Mrs. Bennett the insurer had discovered traffic violations and a wreck on her son's driving record, Mrs. Davis told her the company wanted the policy back. Mrs. Bennett protested, stating she would call her son concerning the alleged wreck, of which she had no knowledge.

Mrs. Davis "believed" she advised Mrs. Bennett that it would be better for her record to turn the policy in to the company rather than "to let them send you a direct". Mrs. Bennett denied she was so informed.

During the day Mrs. Davis was called two or three times by Mellott, who also disputed his driving record as set out in defendant's letter. He criticized defendant's investigation. Mrs. Davis testified Mellott told her he had other insurance "up there"; Mellott rebutted this, stating

he had discussed only the possibility of obtaining other insurance. Both testified she told him "we could write back and have the company check".

After a call from her son, Mrs. Bennett was again telephoned by Mrs. Davis who wanted her to bring in the policy. At about 2:30 P.M., still on the same day, Mrs. Bennett stopped at the McCoy Agency on her way to work. She customarily carried the policy along with some other papers in her purse. She testified "Mrs. Davis then asked me to hand her the policy and I handed it to her". Referring to the same event, Mrs. Davis testified, "She handed me the policy and didn't like it".

At about 4:30 P.M. Mrs. Davis mailed the contract to defendant with a memorandum stating, "Here is the policy requested. Please cancel. And the insured has secured insurance up there".

On the same evening at about 7:30 P.M. the auto described in the policy, driven by Mellott, was involved in the wreck which resulted in plaintiff's injury.

Defendant on July 5, 1967, mailed to Marjorie B. Bennett a "Notice of Cancellation". This instrument was characterized by defendant's underwriter as a mere memorandum setting forth the computation of her refund. Obviously this was the insurer's standard form of cancellation notice. It recited the company "hereby gives you written notice *in accordance with the policy conditions* of the cancellation of the above numbered policy" (Emphasis supplied). Cancellation date was retroactively specified as June 29, 1967 at 12:01 A.M. Return premium of $17.20 was indicated in the space provided.

■ I. *Was the policy cancelled by surrender?* If the delivery of the policy to McCoy Agency was a valid surrender under the provisions of Paragraph 16 above quoted, then defendant was not an insurer at the time of the wreck and has no liability under § 516.1. Trial court held the surrender was not voluntary and was

ineffective as a cancellation. Defendant assigns error from such finding and conclusion.

■ The burden of proving a cancellation is upon the insurer interposing it as a defense. Home Ins. Co., N. Y. v. Fidelity-Phenix Fire Ins. Co., 225 Iowa 36, 279 N. W. 425 (1938); Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa 1133, 184 N.W. 756 (1921); 21 Appleman Ins. L. & P., § 12248, p. 189, § 12278, p. 200; 45 C.J.S. Insurance § 461a, p. 129.

■ Mere transfer of physical possession of the policy, absent an intent on the part of the insured that the act is a surrender for immediate cancellation, does not effect a termination of the contract. Such intent is to be determined from all the surrounding facts and circumstances. Smith v. American Ins. Co., 197 Iowa 761, 198 N.W. 48 (1924); Smith v. Firemen's Ins. Co., 104 F.2d 546 (7 Cir. 1939); Farris v. Commercial Union Fire Ins. Co. of New York, 176 Okl. 331, 55 P.2d 432 (1936); Wicks v. Scottish Union & National Ins. Co., 107 Wis. 606, 83 N.W. 781 (1900); 6 Appleman Ins. L. & P., § 4229, p. 804; 45 C.J.S. Insurance § 458, p. 118.

The Supreme Court of South Carolina in Dill v. Lumbermen's Mut. Ins. Co., 213 S. C. 593, 50 S.E.2d 923 (1948) had before it a cancellation by surrender defense based upon an almost identical policy provision. There as here the insurer directed the policy be picked up for cancellation. Insured upon request left the policy with the agent's secretary, stating he wanted to talk to the agent. Before further communication the loss occurred. The court held the insurance was still in force, stating:

"The authorities are well nigh unanimous to the effect that the mere physical surrender of the policy by the insured standing alone does not terminate the contract. Such surrender must be voluntary and unconditional. The intent to cancel must be manifested and whether there is such a manifestation is to be gathered from all the facts and circumstances connected with the physical act of surrender. Ordinarily, the question is one for determination by the jury." (50 S.E.2d 923, 926).

In the case before us there was substantial evidence from which the trial court could find Mrs. Bennett had no intention to cancel the policy by any act of hers. Plaintiff's evidence would sustain a finding that in Mrs. Bennett's mind the delivery was preliminary to *company* cancellation which under the policy provisions required a 10 day notice. See also § 515.81, Code, 1971. Mrs. Bennett testified "I asked her what she wanted me to bring the policy in for and she more or less give me the impression they were going to cancel me out".

■ Mellott denied he told Mrs. Davis he had obtained other insurance. He obviously had none, hence this litigation. Mrs. Bennett testified she was never informed of any other insurance by either Mrs. Davis or her son. To hold for the defendant the court would have been required to find that Mrs. Bennett without apparent consideration waived her valuable right to the 10 day notice she was entitled to under the policy, thus leaving her vehicle uninsured. Such waiver should not be lightly inferred from circumstances equally consistent with the absence of such waiver. Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa 1133, 1140, 184 N.W. 756, 760 (1921); see also 43 Am.Jur.2d, Insurance, § 415, p. 463.

Defendant relies on the rule that where the facts are undisputed we are not bound by trial court's interpretation, it being a question of law. Ertl Company v. Lange Plastics Company, 158 N.W.2d 93 (Iowa 1968). In this case there are material conflicts in the testimony only a few of which are mentioned in this opinion. The general rule is applicable: findings of fact in a law action are binding upon the appellate court if supported by substantial evidence. Rule 344(f) (1), Rules of Civil Procedure.

Here substantial evidence supports the finding of trial court. The policy in question was not cancelled by surrender.

■ II. *Was the issuance of the execution and its return unsatisfied a "frivolous nullity"?* Defendant by answer generally denied "that plaintiff has any rights under the provisions of Section 516.1 of the 1966 Code of Iowa * * *". At trial's commencement it stipulated execution had been issued and returned unsatisfied, as shown by the court file. Defendant at no time raised a direct issue concerning the execution until motion to dismiss after both parties rested. It then urged execution was issued to the sheriff of Linn county who searched in Linn county, which was not policyholder's residence. Therefore, "the return does not show a return of an execution unsatisfied, as is required by the statute of the State of Iowa, and the same is frivolous, is a nullity and in no way furnishes to the plaintiff any foundation upon which to maintain this action".

At all pertinent times Mrs. Bennett resided in Van Buren county. The wreck occurred in Linn county, where Philip E. Mellott then lived. No proof was submitted as to his residence on the date of return of execution on November 19, 1968. At time of this trial on April 20, 1970 he resided at Fairfield, Iowa.

Policy Paragraph 6 under "Conditions" provides, "Any person * * * who has secured such judgment * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy". The contract contains no express provision requiring an unsatisfied execution. Trial court in its statement of the case asserted that plaintiff's cause was grounded upon this paragraph as well as § 516.1, Code. Plaintiff ingeniously argues this bifurcation, which would finesse the troublesome execution and return. Under other circumstances it might be arguable that plaintiff was a third party beneficiary under this separate policy provision. Hudson, Contracts in Iowa Revisited—1958–1963, 13 Drake L. Rev. 3, 6–9 (1963); Venz v. State Automobile Ins. Ass'n of Des Moines, 217 Iowa 662, 251 N.W. 27 (1933). Here, however, the plaintiff prefaced the allegations of his petition by stating it was brought under the provisions of § 516.1 of the 1966 Code of Iowa. No allegations point to any other ground, nor is there any indication the case was tried on a different theory.

This is not fatal, however, to plaintiff's case under § 516.1. Mellott was using the policy described vehicle with the consent of the named insured. He was an "insured" under the contract provisions. Ocean Accident & Guaranty Co. v. Schmidt, 46 F.2d 269 (6 Cir. 1931). Section 516.1 employs the word "insured", not "policyholder". Defendant produced no proof that Mellott changed his Linn county residence before November 19, 1968, when execution was issued and returned. It was stipulated plaintiff obtained judgment against Mellott. Execution was issued against this insured judgment debtor and returned unsatisfied. The conditions of § 516.1 were met.

There is no instruction in § 516.1 specifying the county into which the execution must issue. Executions may issue into any county which the party ordering it may direct, § 626.2, Code, 1971. A judgment creditor would be motivated to cause the execution to issue where debtor's property might be found, rather than pursue the extensive litigation presented by this appeal. This impels the good faith efforts of plaintiff and negates frivolous conduct. We are not persuaded to adopt the highly technical defense raised by defendant against the judgment creditor who caused execution to issue into the county of judgment where, insofar as this record reveals, the auto of one judgment debtor and residence of the other might well be located.

The execution and return were neither frivolous nor a nullity. On this point the trial court was right, even though for a

wrong reason. We thus uphold its conclusion. Schnabel v. Vaughn, 258 Iowa 839, 140 N.W.2d 168 (1966).

We find no reversible error and the case is

Affirmed.

All Justices concur.