CITY OF INDIANAPOLIS *v.* BUTZKE.

[No. 27,363. Filed April 22, 1940. Rehearing denied May 27, 1940.]

204

*Edward H. Knight, Floyd J. Mattice, Michael B. Reddington,* and *Oscar C. Hagemier,* all of Indianapolis; *Earl F. Gruber,* of Frankfort, for appellant.

*Little, Little & Horn* and *Owen S. Boling,* all of Indianapolis; *Christian & Waltz,* of Noblesville; and *Thomas Ryan* and *Robison & Robison,* all of Frankfort, for appellee.

FANSLER, J.—The appellee, while a member of the fire department of the City of Indianapolis, was injured in a collision between two fire trucks, as a result of which he lost one of his legs. He brought this action seeking to recover damages for the injury. His complaint charges negligence •in the maintenance of the city's fire apparatus. There was a trial, verdict, and judgment of $35,000 for the plaintiff.

The appellee has moved to dismiss the appeal upon the ground that no question is presented for review. It is contended that the amended complaint was re-amended and the demurrer was not refiled, so that the ruling on the demurrer cannot be considered. But, as hereafter indicated, the same question arises upon the ruling on the motion for a new trial, and we need not consider that question. It is contended that the evidence is not properly brought into the record for the reason that the transcript of the evidence was filed in the office of the clerk before the bill of exceptions was presented to the judge for his signature. The certificate of the judge discloses that the bill of exceptions containing the evidence "is now this 8 day of April, 1938, signed, sealed, and filed, and made a number in the record in this cause," and, since the certificate of the clerk, dated the same day, certifies that the bill of exceptions in the transcript

"is the original bill of exceptions filed in said cause," it is sufficiently established that it was signed and filed and properly brought into the record. The motion to dismiss is overruled.

The only assigned error that we need notice is the overruling of the motion for a new trial upon the ground that the decision is contrary to law.

It is recognized by both parties that, in this state, cities are not liable for the negligent operation of their fire departments and fire apparatus, but the appellee contends that this case is not governed by the ordinary rule for three reasons. First, it is alleged, and proved, that the city maintained and operated a repair shop and garage for the repair of its fire trucks and apparatus by a special force of men, whose sole duty was the repairing and rebuilding of apparatus. It is conceded that if the apparatus was repaired in the regular fire house by the regular firemen the city would not be liable for negligent maintenance, but it is contended that, since it is all brought to one common spot, away from the fire house, and, since the repair work is done by a special group of men who do nothing else, the city is acting in its private and business capacity in making the repairs, and is therefore liable for negligent maintenance of the apparatus. We fail to find any logical or reasonable basis for a distinction in liability because of the difference in methods of doing repair and maintenance work. We do not take this contention seriously.

Secondly, it is alleged, and was proven, that the City of Indianapolis furnishes the Town of Woodruff Place, a separate municipal corporation, which lies entirely within the corporate limits of the City of Indianapolis, with fire protection, for a definite annual consideration, and that it furnishes fire protec-

tion to other municipalities for a consideration. It is urged that this is engaging in a private business enterprise for an immediate profit or advantage to the municipal corporation, and in which the corporation has a local and special interest; that the city is therefore not acting governmentally in the maintenance of its fire department, and that, although the accident complained of did not occur in connection with furnishing fire protection service to the town of Woodruff Place, or to any other municipal corporation outside the City of Indianapolis, the city is liable. In *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 23, 24, 112 N. E. 994, 996, it is said: "While the distinction between public and private functions as affecting liability for negligence of its agents is generally recognized, a great deal of confusion arises when an attempt is made to determine in what capacity the municipality was acting in committing the particular tort complained of. Many different rules have been formulated on the subject by jurists and text-writers, who apply tests of whether the department in which the injury occurred was of a nature legislative or administrative, discretionary or ministerial, performed by persons whose offices were created by the legislature or the municipality, whether the department and its duties were made mandatory by the statutes of the state or were merely permissive, or whether the city received any pecuniary benefit in the operation of such department or operated it gratuitously. Such rules and tests have no uniform application and many authorities expressly find it impossible to state, by way of definition any rule sufficiently exact to be of much practical value. Each case must be determined under a true interpretation of the statute under which the municipality was created and under a proper conception of the powers and duties delegated to it. Upon

the historical theory that the king or sovereign power is being exercised in the keeping of the peace, passing and enforcing laws and ordinances, preserving the public health, preventing fires, caring for the poor and carrying on a system of education and that such power is inherently present in such activities, it is generally held that a city is exercising governmental powers in the operation of the departments having charge of these matters, and that it is therefore not liable for torts committed in the discharge of the duties connected therewith." It is a quite common practice for outlying townships to make an arrangement by which their children are permitted to attend city high schools or grade schools for a consideration. It is also a common practice for federal courts to arrange for the confinement of their prisoners in county jails for a consideration, and yet it cannot reasonably be said that the counties are engaging in the private or commercial business of being a jailer, nor that the cities are engaged in the private or commercial business of operating schools. It would not be contended that a city would become liable for negligence in the maintenance of its schools because of the fact that it received some compensation for rendering an educational service to children from an outlying community, and that the acceptance of such compensation would make them liable to all children and all persons. It seems to us that the furnishing of fire protection to the small municipality located within the confines of the city, or to other municipalities, is in the same category. A statute, § 48-702, Burns' 1933, § 12468, Baldwin's 1934, expressly provides that where an incorporated town or city is located within the corporate limits of another city, the minor municipality shall not be entitled to receive any fire or police protec-

tion from the larger city until it shall have entered into a contract or agreement with the city, binding it to pay a reasonable compensation, and it is provided that, if the municipalities cannot agree, either may present the matter to the judge of the circuit court, who shall fix a reasonable compensation. If the furnishing of fire protection would make the City of Indianapolis liable for negligence in the operation of its fire department anywhere, it is difficult to see why the furnishing of police protection would not make it liable for negligence of its police department. We are unable to reach the conclusion that the furnishing of such service, governmental in character, can be said to amount to engaging in a private commercial enterprise by the city. Fire and police protection are furnished at the expense of the taxpayers. Small municipalities ordinarily have less use for fire equipment than larger ones, and ordinarily are unable to afford as elaborate and efficient equipment. Small communities lying within or adjacent to larger municipalities, and without fire protection, are a fire hazard to property within the larger communities. In enacting the statute above referred to, the Legislature no doubt considered that the compensation paid by the minor municipality to the larger one, which, of course, would be raised by a tax upon the taxpayers of the minor municipality, would create a burden upon them comparable with the burden of the taxpayers of the larger community occasioned by the expense of maintaining a fire and police force. It is not doubted that where such service is furnished to small communities it is not with a view of profit or private benefit to the larger municipality other than the benefit of having the smaller community protected so that it does not become a hazard to the larger community. The compensation is no doubt based upon the proportional

cost of the service furnished. It is a well-known fact that in case of serious fires, cities at a considerable distance send fire-fighting apparatus and equipment to assist their neighbors, not as a business enterprise, but in the neighborly spirit which prompts individuals to assist voluntarily in preventing the destruction of their neighbors' property. When the schools of the city are opened to students from outlying districts, the compensation is a means of permitting the smaller community to pay its proportional share of the burden of expense for a quality of educational service which it could not otherwise afford, and it is reasonable to conclude that the arrangement by which the City of Indiaanpolis furnishes fire and police protection to the small community of Woodruff Place, and other contiguous communities, is upon the same basis.

It is also contended by the appellee that the city is liable because the motor vehicle law (Acts 1925, ch. 213, p. 570, § 47-101 et seq., Burns' 1933, § 11100, et seq., Baldwin's 1934) requires that the city provide its fire trucks with good and adequate brakes, and that: "Wherever a statute commands a municipality to do certain things, such constitutes a ministerial duty as distinguished from a governmental function. In governmental functions the municipality has the right to decide by the legislation of its common council as to whether a thing shall or shall not be done, but where the State Legislature has passed a statute commanding such things to be done, such constitutes a ministerial duty, the violation of which renders the municipality liable. . . ." No good purpose would be served by extending this opinion to great length in discussing the contention that fire engines are expressly included in the act, notwithstanding expressions excluding them therefrom. It is difficult to construe the act

as indicating a legislative intention that it shall cover municipally-owned fire apparatus. But, if it could be so construed, we think it would not affect the result. The appellee distinguishes between a "ministerial duty" and a "governmental function." The cases upon which he depends distinguish between ministerial, judicial, and legislative functions, but, as pointed out in *City of Kokomo* v. *Loy, supra,* the reasoning in the cases adopting the distinction relied upon is unsatisfactory. It is not of uniform application and is not sufficiently exact to be of practical value. It seems clear that in the case referred to this court intended to repudiate the rule upon which the appellee relies. Regardless of the statute, it would be negligent to operate a vehicle of the size and character of a fire truck without brakes, but the nonliability of the city is not because of a lack of negligence, but because the operation of the fire department pertains to the public and governmental functions of the city as distinguished from things which it does in its private corporate capacity. It is difficult to rationalize the general principle with liability for negligent maintenance of the streets by a city, for the maintenance of highways is clearly a governmental function. There are two lines of cases, one following the Massachusetts rule, in which cities were held not liable for negligence in the maintenance of streets in the absence of an express statute, and the other following the New York rule, making cities liable because of their exclusive control and supervision over streets. As pointed out in *City of Kokomo* v. *Loy, supra,* this court early and always followed the New York rule, and it was followed in that case without effort to justify it. The language of the opinion leaves much room for doubt as to whether the court would have adopted the rule had the question been an open one. It must be con-

cluded that the liability or nonliability of a municipality for torts does not depend upon the nature of the tort, but upon the capacity in which the city was acting in committing the tort complained of, that is, whether it was acting in a public or private capacity; and, where the question is an open one, it is felt that it should be resolved upon that basis. The rule in this state has always been that cities are not liable for the negligent operation or maintenance of their fire departments or equipment, and we conclude that the fact that a separate shop and force of men were used for the purpose of maintaining equipment, and that the city had a contract to furnish fire protection to the town of Woodruff Place, and perhaps other small communities, furnishing them in their governmental capacities with a governmental service, and was reimbursed and compensated therefor, and the fact that a statute required it to equip its vehicles with efficient brakes, if the statute so requires, and we do not believe that it does, are not sufficient bases for taking this case out of the general rule of nonliability.

Judgment reversed, with instructions to sustain the motion for a new trial. The question of whether or not the striking out of a word in the complaint was such an amendment as to take out the demurrer, we need not consider. The question may be obviated by the filing of a demurrer when the motion for a new trial is sustained, and, if so filed, and it is based upon the grounds indicated in this opinion, it should be sustained.

Swaim, J., not participating.

NOTE.—Reported in 26 N. E. (2d) 754.

ON PETITION FOR REHEARING.

FANSLER, J.—On petition for rehearing, the appellee contends that the court erred in failing to give a decision in writing, upon his contention that the appellant's brief does not comply with clause 6 of rule 18 of the rules of this court concerning the preparation of briefs, contrary to the direct mandate of the Constitution.

It is well settled, and has been repeatedly announced by this court, that if a good-faith effort to comply with the rule is disclosed, and there is a substantial compliance so that the court can understand the questions sought to be presented, the brief is sufficient. See *Letz Manufacturing Co. et al.* v. *Public Service Commission of Indiana* (1936), 210 Ind. 467, 4 N. E. (2d) 194; *Smith, Adm'r,* v. *Miller, Guardian* (1935), 209 Ind. 55, 197 N. E. 892; and *Slinkard* v. *Hunter* (1936), 209 Ind. 475, 199 N. E. 560. Numerous cases to the same effect might be cited. The breach of the rule in this case is in the letter and not in the substance. The questions sought to be presented are clear, and there can be no doubt as to the errors to which the authorities and the argument are directed.

If, technically, the brief may be said not to conform to the letter of the rule, so also it may be said that the objection of the appellee, that this court has failed to follow the mandate of the Constitution, is not sustained by the letter of the Constitution. The provision relied upon is § 5 of Article 7, which is as follows: "The Supreme Court shall, upon the decision of every case, give a statement in writing of each question arising in the record of such case, and the decision of the Court thereon." The "record" is generally considered as referring to the record of the proceedings in the trial court brought to this court for review. The purpose of the appeal is to scrutinize the

record of the court below for error. Many motions, some of them dilatory, are filed in this court which have nothing to do with the record below. These motions are ruled upon in due course. If the questions involved are deemed important, they are written into the opinions, notwithstanding they do not arise "in the record of such case." But where the motion involves some rule that is well settled and clearly understood, no good purpose is served in incumbering the reports with a statement of the facts and a repetition of a well-settled rule.

Whether a brief indicates a good-faith attempt to comply with the rules, and such a substantial compliance as will permit the court to clearly understand the questions sought to be presented, is a question of fact and not of law. The court will refer to objections to the brief when it is thought that it will be helpful as a guide to the bar, but it is not considered that such questions are within the constitutional mandate.

The petition for rehearing is denied.

NOTE.—Reported in 27 N. E. (2d) 350.