EULRICH, Appellant, vs. CITY OF CLINTONVILLE, Respondent.

DUPONT FARMERS MUTUAL FIRE INSURANCE COMPANY, Appellant, vs. SAME, Respondent.

*September 10—October 7, 1941.*

For the appellants the cause was submitted on the brief of *Eberlein & Eberlein* of Shawano.

*A. Don Zwickey,* city attorney, for the respondent.

MARTIN, J.  The complaint in each action alleges substantially the same set of facts.

The plaintiff Eulrich, at the time in question, owned and operated a farm located in the township of Matteson in Waupaca county.  She also owned a considerable amount of personal property which was located in the barn on said farm at the time of the fire.  The plaintiff Dupont Farmers Mutual Fire Insurance Company had issued its policy of insurance to the plaintiff Eulrich covering in part any fire loss by reason of the destruction of or damage to said barn or personal property.

On the evening of December 31, 1939, at about 6:20 p. m., plaintiff discovered a fire in the milk-machine room in her barn. A fire call was phoned to the fire department of the city of Clintonville.  The city firemen responded and extinguished the fire, or at least thought so.  They thereupon left the scene of the fire to return to the city of Clintonville.  It is alleged that soon thereafter, and before the firemen had reached the city of Clintonville, the fire broke out again and a second call was made to the city; and when the fire department reached the city of Clintonville it immediately returned to the Eulrich farm, but by the time it reached there the fire was hopelessly out of control, and destroyed the barn and personal property therein.

The Dupont Farmers Mutual Fire Insurance Company, under its policy of insurance, paid the plaintiff Eulrich the sum of $2,828.50.  She alleges a total loss, by reason of the fire, in the sum of $7,500, and in her action against defendant city she seeks to recover the difference between the $2,828.50 received from the insurance company and the alleged total loss of

$7,500. The Dupont Farmers Mutual Fire Insurance Company in its action seeks to recover the amount it paid Mrs. Eulrich.

It is alleged in the complaint in both actions:

"That the city of Clintonville, through its officers and agents, refused and neglected to remain at the scene of the fire, although the agent of this plaintiff pleaded with them to stay, and warned them of the danger of the fire not being wholly extinguished, and left within an unreasonably short time, without leaving any fire-fighting equipment upon the premises, so that the agents of this plaintiff could help themselves."

On September 1, 1939, the city of Clintonville, as party of the first part, entered into a written agreement with the officers of the townships of Larrabee and Matteson, and the officers of the village of Embarrass, all in Waupaca county, and with the townships of Bear Creek and Deer Creek, and the village of Bear Creek in Outagamie county, as parties of the second part. This contract recites that the parties thereto have joined in the purchase of an F. W. D. fire truck to be used for the protection of life and property in their respective communities. It then provides:

". . . Whereas the city of Clintonville, of the first part, has offered to house and maintain said truck and equipment, and that the parties of the second part, in order that a central firehouse may be acquired and that an operator and men may be available at all times, have decided to accept said offer."

The agreement further provides:

"Now, this agreement witnesseth:
"That the certificate of title to said fire truck and equipment is to be issued in the name of the city of Clintonville, for purposes of convenience, so as to thereby simplify and facilitate the licensing and insuring of said vehicle and equipment. It being mutually understood and agreed that the foregoing title arrangement is for purpose of convenience only, and that the parties of the first and second parts shall have and retain a

share in the ownership of said vehicle and equipment in accordance with, and in proportion to, the amount of money each has contributed toward the purchase of said fire truck and equipment.

"That the party of the first part agrees to keep and house the said equipment in its regular firehouse; and that it will keep said vehicle and equipment in repair, replace tires, batteries and accessories as time may require; that it will furnish all necessary hose and keep same in condition; that it will keep all chemical tanks and fire extinguishers full and ready for any emergency; that it will furnish all gasoline and oil and will keep said vehicle properly lubricated.

"The first party agrees that it will keep and cause said fire truck to be fully covered by insurance, including fire and liability policies; and for whatever other coverage the first party in its judgment deems necessary;

"The first party further agrees that it will at all times have available and furnish a driver-operator and two of its regular firemen, in a manner similar to that employed in the manning of the present, local fire department. The first party agrees to assist in the training of the firemen furnished by the parties of the second part, in the same manner and to the same extent the firemen of the first party are trained.

"In consideration of the covenants and agreements of the party of the first part, the parties of the second part do hereby covenant and agree as follows:

"That they will pay unto the party of the first part the sum of twenty-five ($25) dollars for each and every fire run made into their respective localities. In the event said equipment must remain at a given fire longer than three hours, an additional ten ($10) dollars per hour shall be paid for each and every hour, or part thereof, over and above the afore-mentioned three hours. It is mutually understood that the payments are to be made by the party within whose boundaries the fire occurred. Any compensation paid to firemen other than three furnished by the first party shall be paid by the second party at whose insistence the fire run was made.

"The second party further agrees that the first party shall be permitted to use the said fire truck and equipment for any and all fires within its limits, and that said first party shall not be limited to using the said equipment only in the event its

present fire apparatus proves insufficient or inadequate. But in the event the first party is using all of said equipment and a call is received from any of the second parties, said first party immediately shall disperse one of the trucks to the scene of the fire as per the call from the second party.

"The second party further agrees that it will not hold the first party liable for any delays in getting to the scene of a fire when such delay is caused by strikes, accidents, flat tires, or from any other agency or cause which is unforeseen and beyond the control of the first party."

The foregoing agreement was signed by the township, city, and village officials of the respective municipalities. The agreement appears to have been made pursuant to sec. 60.29 (20) (a), (b), (c), Stats. Prior to 1925, sec. 60.29 (20) provided:

"The supervisors of any town, situated within a county of three hundred thousand inhabitants or more, may make deposit and payment out of the general fund to any city in said county to secure and pay for fire-department services in said town, and for the prevention and extinguishment of fires as may be necessary and proper."

Under this statute the authority thereby conferred upon the supervisors of any town was confined by reason of the population requirement to townships in Milwaukee county. In 1925, by ch. 70, Laws 1925, the statute was amended, striking out the population requirement so as to read:

"The supervisors of any town may make deposit and payment out of the general fund to any city or incorporated village in said county to secure and pay for fire-department services in said town, and for the prevention and extinguishment of fires as may be necessary and proper."

In 1927, by ch. 512, Laws of 1927, sec. 201.59 (1) (b), Stats., was enacted and provided as follows:

"Whenever a city or village shall contract with another city, village or town to provide fire protection and the services of its fire department, it shall be subject to the same liability for

property damage and personal injury when responding to calls and providing such services outside its corporate limits as when providing the same services within its corporate limits."

By sec. 78, ch. 487, Laws of 1933, sec. 201.59 (1) (b), Stats., was renumbered as sec. 201.59 (2), to read as now found in the statute of 1939:

"201.59 (2) Whenever a city or village shall contract to provide fire protection and the services of its fire department outside of its boundaries, it shall be subject to the same liability for property damage and personal injury when responding to calls and providing such services as when providing the same services within its limits."

We need not consider any questions relative to the power of the several municipalities to enter into the agreement in question. That may be conceded. Likewise, it may be conceded that there was some degree of negligence on the part of the firemen who responded to the first call in not remaining at the scene of the fire until it was definitely determined that the fire had been extinguished.

Assuming that there was some negligence on the part of the city firemen, is the city legally liable?

Sec. 201.59 (2), Stats., above quoted, specifically provides that where a city or village contracts to provide fire protection and services of its fire department outside of its boundaries it shall be subject to the same liability for property damage and personal injury when responding to calls and providing such services as it would be when providing the same services within its municipal limits.

We think it definitely settled under the law of this state that if the fire in question had occurred under like circumstances and facts within the municipal limits of the city of Clintonville, there would be no liability on the part of the city. In *Hayes v. Oshkosh* (1873), 33 Wis. 314, a stock of goods belonging to the plaintiff in the city of Oshkosh was damaged in conse-

quence of the burning of the building in which they were contained, and in consequence of the throwing of water upon said building to extinguish the flames. It appears that at the time the building took fire, two steam fire engines belonging to the city were located near it, the firemen were operating them to extinguish a fire then burning in the barn of one Gill, in that neighborhood. The complaint alleged that the city was then in the possession and control of said engines; that they were employed by the city, and under the direction, charge, and management of its servants, in extinguishing the fire in said barn; and that they were so carelessly and negligently managed and operated, that large quantities of sparks, coals, and cinders were allowed to escape from their smokestacks and fall upon the building in which plaintiff's goods were, and there remain without being wet or in any manner extinguished, until they set fire to said building and caused the damage to plaintiff's goods. The city answered, admitting it was the owner of the steam fire engines mentioned, and averred that at the time they were in the control of and used by the firemen to extinguish the fire in the Gill barn and to prevent the same from spreading.

At conclusion of the evidence there was a directed verdict for the defendant city. From a judgment on such verdict the plaintiff appealed. Dixon, C. J., speaking for the court, said (p. 318):

"The question presented in this case is settled by authority as fully and conclusively as any of a judicial nature can ever be said to have been. The precise question may not have heretofore been decided by this court, but a very similar one has, and the governing principle recognized and affirmed. *Kelley v. Milwaukee,* 18 Wis. *83. Neither the charter of the city of Oshkosh nor the general statutes of this state, contain any peculiar provision imposing liability in cases of this kind; and the decisions elsewhere are numerous and uniform, that no such liability exists on the part of the city. . . . The grounds of exemption from liability, as stated in the authorities last

named, are, that the corporation is engaged in the performance of a public service, in which it has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants, or of the communities; that the members of the fire department, although appointed by the city corporation, are not, when acting in the discharge of their duties, servants or agents in the employment of the city, for whose conduct the city can be held liable; but they act rather as public officials, or officers of the city charged with a public service, for whose negligence or misconduct in the discharge of official duty no action will lie against the city, unless expressly given; *and hence the maxim respondeat superior has no application."*

Judgment was affirmed.

To the same effect see *Manske v. Milwaukee,* 123 Wis. 172, 175, 101 N. W. 377; *Higgins v. Superior,* 134 Wis. 264, 267, 114 N. W. 490; *Engel v. Milwaukee,* 158 Wis. 480, 481, 149 N. W. 141.

In their brief plaintiffs' counsel say:

"We will concede at the outset that if what happened at the Eulrich farm in the absence of contractual relations had happened in the city of Clintonville to one of its own citizens that there would be no liability and that the decision of our supreme court in the case of *Hayes v. Oshkosh,* 33 Wis. 314, would govern."

Then plaintiffs argue that because of the contractual relationship in the instant cases the rule in *Hayes v. Oshkosh,* and in the other cases cited above, is not applicable.

The contract in the instant cases does not take them out of the rule laid down in the cases above cited, nor does it take the cases out of the protection afforded by the provisions of sec. 201.59 (2), Stats. Plaintiffs' argument that the defendant city derives a benefit from the contract is fully answered by this court in *Britton v. Green Bay & Fort Howard Water Works Co.* 81 Wis. 48, 51 N. W. 84; *Krom v. Antigo Gas Co.*

154 Wis. 528, 140 N. W. 41, 143 N. W. 163; *Highway Trailer Co. v. Janesville Electric Co.* 187 Wis. 161, 204 N. W. 773.

In all of these cases the defendants derived benefits. The court denied recovery to the plaintiffs. In *Highway Trailer Co. v. Janesville Electric Co.,* after quoting at length from *Hayes v. Oshkosh,* at page 165, the court said:

"It is also the rule, sustained by the great weight of authority, that when a municipality makes a contract with a water company whereby the company agrees to furnish water for the extinguishment of fires, a private citizen who suffers loss by fire through the failure to fulfil the contract has no right of action against the company. Various reasons have been assigned for this rule. In many of the decisions it is said there is no privity between the water company and the inhabitant; that the contract deprives the citizen of no right and creates no new right, since he could maintain no action against the municipality for its negligence in failing to furnish fire protection. It gives as a reason in other cases that when, for convenience and the best interests of the community, a city procures a private company to furnish a water supply, such company is thereby made the agent of the city in the performance of a governmental duty and there should be no higher liability on the agent than on the principal. . . . For these and other reasons it is the prevailing rule that a citizen or taxpayer has no such direct interest in a contract between a municipality and a private corporation for supplying water as to authorize an action either on the contract or in tort for failure to furnish water for protection against fire."

We think it clear that the complaints in the instant actions fail to state a cause of action against the defendant city.

*By the Court.*—Orders affirmed.