219 F.2d 559
 UNITED STATES of America, Appellant and Cross-Appellee,
v.
Oren LAWTER, Appellee and Cross-Appellant.
Oren LAWTER, Appellee and Cross-Appellant,
v.
UNITED STATES of America, Appellant and Cross-Appellee.
 No. 15050.
 United States Court of Appeals, Fifth Circuit.
 March 2, 1955.
 
 Alan S. Rosenthal, Atty., Dept. of Justice, Paul A. Sweeney, Washington, D. C., E. David Rosen, Asst. U. S. Atty., Miami, Fla., Warren E. Burger, Asst. Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., Leavenworth Colby, Atty., Dept. of Justice, Washington, D. C., Lieutenant William E. Fuller, U. S. Coast Guard, Washington, D. C., of counsel, for appellant.
 Arthur Roth and Monte K. Rassner, Miami, Fla., Jacob Rassner, New York City, of counsel, for appellee.
 Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.
 HUTCHESON, Chief Judge.
 
 
 1
 Claiming under the Public Vessels Act, Title 46 U.S.C.A. § 781 et seq., and the Tort Claims Act, Title 28 U.S.C. § 1346 (b), the suit was for damages for the death of plaintiff's wife. The claim was that the death was caused by the negligence of Coast Guard personnel in the conduct of a helicopter air-sea rescue.
 
 
 2
 The defenses were: (1) that the United States was not liable and had not consented to be sued for the negligence of the Coast Guard in the conduct of such rescues; (2) that the death was not caused or contributed to by any fault, negligence, or want of care on the part of the United States, the helicopter, or those in charge or control of it; and (3) that it was caused by the negligence and fault of the deceased and of the plaintiff, her husband, in not securing her firmly by the straps on the helicopter cable before permitting her to be drawn up.
 
 
 3
 The evidence concluded, there were findings of fact and conclusions of law[1] in favor of, and a judgment for, plaintiff.
 
 
 4
 Defendant, appealing from the judgment, is here insisting that the complaint does not state a cause of action and the judgment must, therefore, be reversed and remanded with instructions to dismiss, or that at least the findings that the Coast Guard was, and plaintiff was not, negligent should be set aside as clearly erroneous.
 
 
 5
 Appellee, attacking the quantum of the finding and award of damages as inadequate and clearly erroneous, seeks an increase of the award here.
 
 
 6
 A careful examination and consideration of the findings of fact, in the light of the record as a whole, and of the conclusions of law, in the light of settled legal principle, convinces us that they are well supported and that, as against appellant's attack upon them, they should and must be sustained.
 
 
 7
 As appellee correctly points out, the case made is not one of omission or failure on the part of the Coast Guard to act, but of a definite and affirmative act causing death, an act deliberately undertaken and negligently performed by it.
 
 
 8
 Whatever then might be said of the liability of the United States, if the case had to do with mere negligent omission or inaction of the Coast Guard, as was the case in Indian Towing Co. v. U. S., 5 Cir., 211 F.2d 886, is not controlling here. For the uncontradicted evidence shows that the Coast Guard, pursuant to long established policy,[2] affirmatively took over the rescue mission, excluding others therefrom, and thus not only placed the deceased in a worse position than when it took charge, but negligently brought about her death, and it is hornbook law that under such circumstances the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another not to injure him by the negligent performance of that which he has undertaken. 38 Am.Jur., "Negligence", Sec. 17, p. 659.
 
 
 9
 As to appellee's attack upon the quantum of the finding and award of damages as clearly erroneous, we have held in Sanders v. Leech, 5 Cir., 158 F.2d 486, at page 487,[3] this court has the power in a case tried to a court without a jury to review findings as to damages. However for the reasons stated in the Sanders case, we feel here, as we felt there, that we cannot say that the findings are clearly erroneous.
 
 
 10
 The judgment is affirmed.
 
 
 11
 Judge RUSSELL sat during the argument of this case but, due to illness, he took no part in its decision.
 
 
 
 Notes:
 
 
 [1]
 Findings of Fact:
 (1) The Court has jurisdiction of the parties and subject matter.
 (2) On or about April 18, 1953, the deceased, Loretta Jean Lawter, her husband and libelant herein, Oren Lawter, his brother Andrew Lawter and his wife, Susan Lawter, were in a 16 foot skiff in Biscayne Bay, when a wave drowned out the outboard motor attached to the skiff and further waves resulted in the swamping of the boat. As a result thereof, the four passengers were cast into water approximately 500 yards from the nearest shore. The water at that particular point was approximately four feet deep.
 (3) At the time of the accident small craft warnings were posted and the wind was blowing at a sufficient rate to cause whitecaps and rough water.
 (4) At this time a U.S. Coast Guard helicopter, Model HO4S-2G, was making a routine patrol flight over the Biscayne Bay area. The pilot of the helicopter was Eugene Farley, Lt., J.G., U.S. Coast Guard. Sitting in the co-pilot seat, as a passenger, was Petty Officer First Class Nathaniel Passmore. The crewman in the cabin of the ship was Lloyd S. Antle, Jr.
 (5) The flight by the helicopter was made for the purpose of determining if any vessels or people in the area were in the need of aid or assistance, so that such aid or assistance could be rendered before darkness set in.
 (6) The crew of the helicopter saw the four Lawters in the water. There were no boats or vessels nearby to rescue them. The crew of the helicopter proceeded to undertake the rescue.
 (7) The helicopter was equipped for air-sea rescue work by having as a part of its equipment a cable and a hoist to lower and raise such cable. The hoist was operated by a manual switch and also had an automatic switch stopping the raising of the cable when a weight attached thereto made contact with the boom to which the cable was attached.
 (8) Lloyd S. Antle, Jr., had never taken part in any rescue mission and had had no training in such work or the operation of the hoist. Nathaniel Passmore had taken part in several air-sea rescues and was experienced in such operations.
 (9) The pilot of the helicopter, due to the construction of the ship, was unable to see directly under it when engaged in hoisting people from the sea.
 (10) The pilot did not order Passmore to operate the hoist or conduct the rescue from the cabin of the ship. Instead, he allowed Antle, an untrained man, to perform such duties.
 (11) After undertaking the rescue, Antle directed the pilot until the helicopter was over the four Lawters. The cable was dropped and Susan Lawter took hold of the cable. The belt or sling attached to the cable was not attached to her.
 (12) The cable was dropped again. Oren Lawter secured it and took it over to the deceased. Oren and Andrew Lawter were engaged in the process of attaching the belt or sling to her when Antle began raising the cable. The belt or sling was not attached to deceased and she was merely holding on with her hands. She was raised until her head and shoulders were above the bottom of the door in the helicopter, when Antle stopped the cable. Deceased had not been raised high enough to be brought into the cabin. Before the cable could be raised further, she lost her grip and fell.
 (13) The respondent was guilty of negligence under all of the circumstances. The Court recognizes that the helicopter was not particularly sent to conduct this rescue and that the situation giving rise to the attempt arose suddenly and was in the nature of an emergency. However, there was an experienced man on board in the person of Passmore, and it was negligence to permit Antle to attempt to conduct such rescue operations when Passmore was available. It is clear to the Court that Antle, in his inexperience, began hoisting too soon, stopped raising the deceased before she reached a proper height and, in general, failed to act as an experienced man, such as Passmore would have acted under the circumstances.
 The Court does not mean by this finding that Antle, in view of his inexperience and lack of training, did not act to the best of his ability under the circumstances. The actionable negligence lies in not having the rescue operation conducted by the available experienced man who could have conducted it in a much safer manner.
 (14) The libelant, the deceased, Andrew Lawter and Susan Lawter, and none of them, were guilty of any negligence proximately contributing to the death of the deceased.
 (15) As a direct and proximate result of respondent's negligence, libelant suffered damages in the amount of $10,000.
 Conclusions of Law:
 (1) A duty is imposed upon respondent to act with due and reasonable care in the performance of rescue operations once such rescue operations are undertaken.
 (2) The libelant should have and recover of the respondent the sum of $10,000.
 
 
 [2]
 Cf. Act of Dec., 1837, 5 Stat. 208, 14 U.S.C.A. § 53, and the 1947 Revision and Recodification of the Laws pertaining to the Coast Guard, 14 U.S.C.A. § 88
 
 
 [3]
 "* * * Under [rule 52(a)], as it plainly reads and has been interpreted by the courts, it is not for the appellate court to substitute its judgment on disputed issues of fact for that of the trial court where there is substantial credible evidence to support the finding. It may reverse, though, under the rule (1) where the findings are without substantial evidence to support them; (2) where the court misapprehended the effect of the evidence; and (3) if, though there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case." Cf. what was later said by the Supreme Court in United States v. United States Gypsum Co., 333 U.S. 364 at page 395, 68 S.Ct. 525, 92 L.Ed. 746