R. J. SCHNABEL, appellant, v. BEN VAUGHN and RICHARD GARRISON, d/b/a BEN and DICK'S AUTO SERVICE, appellees.

No. 51911.

(Reported in 140 N.W.2d 168)

FEBRUARY 8, 1966.

REHEARING DENIED MARCH 7, 1966.

Butterfield, Ball, Beekman & Peterson, of Waterloo, for appellant.

Kildee, Keith, Gallagher, Lybbert & Martin, of Waterloo, for appellees.

BECKER, J.—This is an action at law tried to the municipal court for rent due under a written lease. The trial court's findings of fact are binding on us if supported by substantial evidence. Here there is no substantial factual dispute.

The matter is one of those simple situations that become complex in recitation. Perhaps it will be better to refer to the facts in chronological order before considering the contentions of the parties.

While we are not favored with a description of the demised premises except by street and number, it is apparently large enough to house both an automobile repair shop and an automobile sales agency. Plaintiff had leased the premises from Leila A. Young, trustee, for term ending February 28, 1964. This lease is not in controversy and Leila A. Young, trustee, is not a party to this action.

Plaintiff subleased the premises to defendants for $313.07 per month from December 1, 1962, to February 28, 1964. This sublease was in writing, executed November 19, 1962.

On January 5, 1963, one and one-half months after the foregoing sublease was executed, plaintiff entered into another written sublease covering the same premises. This sublease was identical in form to the first one with the following significant exceptions. The sublessee was one David Sutherland, d/b/a West Side Auto Sales. The term was identical in the first portion of the two subleases in that they both expired March 28, 1964, but the second sublease contained this additional para-

842

graph: "It is hereby understood that the term of expiration as 30th day of May, 1963, shall be extended to the 31st day of December, 1963, with option to renew to the 28th day of February, 1964." The rent remained the same.

On the same date, January 5, 1963, plaintiff, defendants and Mr. Sutherland all executed an additional document called a Rental Agreement, under which defendants rented the rear of the building from Sutherland on a month-to-month basis. No rental amount was listed. This instrument closed with the fol-lowing paragraph, "Rentee [defendant here] stipulates that he has knowledge of and agrees to all covenants made in rentor's [Sutherland's] *Sublease Agreement* with R. J. Schnabel."

Plaintiff's petition is based on the first sublease. It ignores the second sublease and the rental agreement. Defendants' answer pleads the second sublease and the rental agreement, alleging that the second sublease canceled and superseded the prior sublease. By way of reply, plaintiff admits execution of the second sublease but denies that it in any manner canceled or superseded the first sublease.

Battle having been thus joined, plaintiff proved execution of the first sublease and that defendant not only took possession under it but continued to pay the $313.07 monthly rent to December 31, 1963.

Without objection David Sutherland testified for plaintiff that in the fall of 1962, he wanted to take over the West Side Auto Sales from one Charlie Kurtt, its then owner. He further testified a licensed auto dealer in Iowa would have to show he possessed a lease to the premises on which he conducted business. Mr. Sutherland also testified that he paid $125 per month rent on the premises to defendants Ben Vaughn and Richard Garrison from the time he took over the operation of the West Side Auto Sales on approximately January 1, 1963, through December 31, 1963, he did not pay any of the utilities on the premises, the utilities were paid by defendants Vaughn and Garrison, he never paid any money whatsoever to plaintiff R. J. Schnabel and defendants were operating the business on the premises for approximately one month before Mr. Sutherland had commenced to operate the West Side Auto Sales there.

I. Plaintiff's position is that the first sublease is valid and has been breached by the defendants. He admits the existence of the second sublease. By reason of the rule of law stated in Division II, infra, plaintiff must destroy the effectiveness of the second sublease and subsequent rental agreement in order to sustain his position. This, of course, would necessitate admission of parol evidence. "The parol-evidence rule is one of substantive law, in the absence of fraud, accident, mistake or ambiguity parol evidence is not admissible to contradict, vary or enlarge the terms of a written contract." Gordon v. Witthauer, 258 Iowa 617, 620, 138 N.W.2d 918, 920. We there noted this rule is subject to exceptions. Plaintiff earnestly contends the parol evidence offered here falls within one of those exceptions.

The evidence offered by plaintiff would tend to prove that the sole purpose of the second sublease was to provide evidence Sutherland could use to obtain his automobile dealer's license. The implication being that the second sublease was never intended to be effective as between the parties. This evidence was rejected by the trial court when it specifically held the parol-evidence rule in connection with such evidence was applicable.

The rule urged by plaintiff is: "A writing may be executed between parties without any intention of affecting legal relations. Such a writing may concern merely transactions of friendship and the like, or it may be for some ulterior purpose, although it is in reality inoperative and is a sham." 20 Am. Jur., Evidence, section 1097, page 957. However, this exception is itself subject to a gloss that where the sham aims at an evasion of the law or a deception of other persons it will not be recognized as an exception to the parol-evidence rule. The entire matter is well put and soundly decided by the Oregon court in the following language:

"Thus, the principal question is: Will the law permit consideration of oral evidence denying the validity of the written memorial of the parties when such oral evidence shows the written document was executed for the purpose of defrauding or misleading a third party?

"The courts are not of a single mind upon this issue. We confess, the majority of jurisdictions at the present time, based

upon pure logic, admit the evidence on the basis that such testimony is offered, not to vary the terms of the written instrument within the letter of the parol-evidence rule, but only to show the parties never intended the written instrument to be a binding agreement.

"The difficulty with this view is that it overlooks the moral aspects of the situation. It permits the law to be used to lend its aid to those who would mislead or defraud third parties without providing any restraining penalty upon their immoral actions. * * *

"And Professor Wigmore, 9 Wigmore on Evidence 16, §2406, states the following:

" 'When the document is to serve the purpose of a mere *sham*, this principle in strictness exonerates the makers. But a just policy would seem to concede this only when the pretence is a morally justifiable one (as, to calm a lunatic or to console a dying person). When it is *morally beyond sanction*, or aims at an *evasion of the law* or a deception of other persons, by intention of the parties, that intention will not be given effect. Hence, if the *validity* of the instrument would give effect to such intention (as in usury), the instrument will not be enforced; but if the *invalidity* of the instrument would give effect to such intention, the instrument will be enforced.' " Kergil v. Central Oregon Fir Supply Co., 213 Ore. 186, 189, 190, 323 P.2d 947, 948, 949, 71 A. L. R.2d 378, 380, 381.

The trial court in its decree properly recognized that plaintiff's evidence indicated the sole purpose of the second sublease was to perpetrate a fraud on the state. We cannot now ignore this second sublease under the rule cited.

Winn v. Rudy-Patrick Seed Co., 249 Iowa 431, 86 N.W.2d 678, is not contrary to the foregoing rule. Our holding there concerned the explanation of certain terms which had a special or technical meaning under the circumstances shown. Winn is not in point here.

II. "A surrender of a lease is implied by law when another estate is created by the reversioner or remainderman, with the assent of the tenant, incompatible with the existing term. * * * It is not necessary that the second lease be given

to the first lessee; if it is given to a third person with the consent of the first lessee, accompanied with the possession, it is equally operative as a surrender. In order that the second lease may operate as a surrender of the first, it is essential that the second lease be a valid one; and therefore, an agreement for a new lease which is invalid by reason of noncompliance with the statute of frauds will not operate as a surrender of an existing lease. If a new oral lease is valid, it may amount to a surrender of the written lease." 32 Am. Jur., Landlord and Tenant, section 910, page 769.

■ The foregoing rule is clearly applicable here. Both subleases cannot be in effect at the same time. This is not a case where the lessee had defaulted and the lessor was mitigating damages, nor does it come under any of the many other fact situations where lessee had given up possession. When he executed the second sublease plaintiff evidenced an intent to rescind and cancel the first sublease. The tenants had no obligation to remain and pay rent beyond December 31, 1963. Plaintiff was paid to that date.

III.   The findings of fact and conclusions of law of the trial court leave much to be desired. Of this, plaintiff justly complains, but it cannot change the result here.

■ "It is well settled that a court decision which is proper on any ground shown by the record will not be disturbed * * * merely because the decision is based on an unsound or erroneous reason. As frequently said, many a learned court is occasionally right for a wrong reason. This rule is more frequently applied in equity cases but it has also been followed in law * * *." Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 525, 526, 111 N.W.2d 317, 322, and authorities cited therein.

■■ "It is well settled that findings of a trial court are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt or ambiguity, findings will be construed to uphold, rather than to defeat, the judgment. * * * Wherever, from the facts expressly found, others may fairly be inferred which will support the judgment, such inference will be drawn. * * * We have held that in construing a decree the intent of the court must be determined from all parts of the instrument and

effect given to that which is clearly implied as well as to that which is expressed." Rank v. Kuhn, 236 Iowa 854, 856, 20 N.W. 2d 72.

Plaintiff's remaining assignments of error have each been carefully considered. To the extent they are not answered in Divisions I and II hereof they are not material because they could not affect the ultimate decision. See Comparet v. Wm. H. Metz Co., 222 Iowa 1328, 271 N.W. 847.—Affirmed.

All JUSTICES concur.