**CANADE, INC., a/k/a Lake Canyada, Inc., Appellant,**

**v.**

**TOWN OF BLUE GRASS and Paul Ehrecke, Appellees.**

**No. 54687.**

Supreme Court of Iowa.

March 16, 1972.

Newport, Newport & Wine, Davenport, for appellant.

Lambach, Stevenson & Goebel, and Wells, Brubaker & de Silva, Davenport, for Town of Blue Grass.

McCracken & Carlin, Davenport, for Paul Ehrecke.

LeGRAND, Justice.

This is an appeal from two orders sustaining motions for summary judgment in favor of each of the two defendants. We affirm the trial court.

The Town of Blue Grass, a municipal corporation, maintains a volunteer fire department under the provisions of chapter 368, The Code, 1966. Defendant Paul Ehrecke was the captain in charge of the fire detail on the night of the events in question. Plaintiff is a corporation operating a trailer park near the Town of Blue Grass. One of the buildings on plaintiff's property houses equipment and other items of personal property for the use and convenience of its tenants.

As permitted by section 368.11, defendant town had undertaken to furnish fire protection to certain persons outside the corporate limits for an agreed fee. Plaintiff was not one of the subscribers for this service, although it had been unsuccessfully negotiating with the town over price for some time.

On February 22, 1967, a fire broke out in this building and the Blue Grass Volunteer Fire Department was called to extinguish the blaze. Upon reaching the scene, defendant Ehrecke determined plaintiff was not one of its subscribers. He thereupon ordered the department to withdraw its equipment, leaving the scene without attempting to extinguish the blaze. Another department from a neighboring town was then called and eventually the fire was brought under control. In the meantime, however, considerably more damage resulted than would have occurred had the Blue

Grass Fire Department acted when first arriving on the scene.

Plaintiff's petition is in two counts. The first alleges implied contract to extinguish this fire. Count II alleges negligence on the part of the town's fire department in failing to use its best efforts to fight the fire.

Answer was filed by each defendant. Interrogatories were requested by both plaintiff and defendants, and answers were filed. Thereafter both the Town of Blue Grass and defendant Ehrecke filed motions for summary judgment under rule 237, Rules of Civil Procedure, on the ground of governmental immunity. The motions alleged that the Town and its firemen were engaged in a governmental function at the time of the acts in question and that therefore no liability can attach for negligence in its performance.

This matter arose prior to the enactment of chapter 613A, The Code, 1971, and must be decided on the law as it existed prior to the adoption of that statute.

■ One other matter should be mentioned. Although plaintiff alleged both negligence and breach of contract, the motion for summary judgment was based, argued, and decided solely on the negligence issue. It was also presented on appeal in that manner. Our consideration is limited accordingly, and we assume plaintiff abandoned any claim it was entitled to recovery on a breach-of-contract theory. Gorman v. Adams, 259 Iowa 75, 79, 143 N.W.2d 648, 650 (1966).

■ There is little difference between the parties. They agree the town is not responsible for negligence of its fire department under the then existing rule of governmental immunity. 57 Am.Jur.2d, Municipal Tort Liability, section 265, page 227; 63 C.J.S. Municipal Corporations § 776, page 81; 18 McQuillin, Third Ed., Municipal Corporations, section 53.30, page 271; Bradley v. City of Oskaloosa, 193 Iowa 1072, 1073, 1074, 188 N.W. 896, 897 (1922); Miller Grocery Co. v. City of Des Moines, 195 Iowa 1310, 1313, 192 N.W. 306, 307 (1923).

■ Plaintiff, however, insists this case falls within the so-called "dual capacity" decisions, holding a city may sometimes be exercising governmental functions and sometimes proprietary ones in the use of the same property or equipment. See Brown v. City of Sioux City, 242 Iowa 1196, 1205, 49 N.W.2d 853, 858 (1951) and Miller Grocery Co. v. City of Des Moines, supra, 195 Iowa at 1313, 192 N.W. at 307.

This argument concedes the town would not be liable for the negligent failure to extinguish a fire within the town limits; but, plaintiff urges, the town forfeits its immunity when it leaves the corporate limits and fights fires for others on a for hire basis.

We believe section 368.11, The Code (1966), disposes of this claim. That section is in part as follows:

"368.11 Fire protection. [Municipal corporations] shall have power to provide for the protection of life and property against fire and to establish, house, equip, staff, uniform and maintain a fire department. They may establish fire limits. They may consistent with code standards promulgated by nationally recognized fire prevention agencies regulate the storage, handling, use, and transportation of all inflammables, combustibles, and explosives, within the corporate limits, and inspect for and abate fire hazards. *They may provide conditions upon which the fire department will answer calls outside the corporate limits and outside of the territorial jurisdiction and boundary limits of the state of Iowa, and the corporation shall have the same governmental immunity as when operating within the corporate limits.* * * *" (Emphasis supplied.)

Under this statuate the town is afforded the same immunity for any negligence of

its fire department whether allegedly committed within or beyond the corporate limits. The dual-capacity cases, even if otherwise applicable, would not supersede this statutory extension of governmental immunity.

While we have not heretofore considered this problem, other courts have adopted the rule above stated. 18 McQuillin, Municipal Corporations, Third Ed., section 53.52, page 271; Eulrich v. City of Clintonville, 238 Wis. 481, 300 N.W. 219, 222, 223 (1941); Banks v. City of Albany, 83 Ga. App. 640, 64 S.E.2d 93, 95, 96 (1951); Bagwell v. Gainesville, 106 Ga.App. 367, 126 S.E.2d 906, 907 (1962); Indianapolis v. Butzke, 217 Ind. 203, 26 N.E.2d 754, 755, supp. opinion 27 N.E.2d 350 (1940); Valevais v. New Bern, 10 N.C.App. 215, 178 S. E.2d 109, 112, 113 (1970).

The principle is stated in 63 C.J.S. Municipal Corporations § 776(b), page 84, this way:

"* * * a municipality is not liable for destruction of property by fire due to the negligence of firemen in leaving before the fire was completely extinguished where a statute provides that a city or village contracting to provide fire protection and the services of its fire department outside of its boundaries shall be subject to the same liability for property damage as when providing the same services within its municipal limits, and there would have been no liability on the part of the city if the fire in question had occurred under like circumstances within the municipal limits."

While our discussion has been limited to the town's liability, plaintiff does not argue defendant Ehrecke is liable in the event the town is not. Hence we give no consideration to that question.

The summary judgment as to each defendant is affirmed.

Affirmed.

All Justices concur, except REYNOLDSON and BECKER, JJ., who dissent and HARRIS, J., who takes no part.

REYNOLDSON, Justice (dissenting).

Defendant town asserts that under the authority of § 368.11, The Code, 1966, it imposed a membership fee as a "condition" upon which its fire department would answer fire calls outside the corporate limits. An answer to interrogatory disclosed the set fees (good for the life of the most recently purchased fire truck) were: Tract under ten acres, $30; more than ten acres, $60; business establishments, $100. Separate memberships were purchased by owners of mobile homes established in various mobile home parks, including the plaintiff park.

When Dr. Fred Glade, president and stockholder of plaintiff, attempted to secure membership for the set fee of $100, he was refused. When he finally acquiesced in a demand for $1500 he was met with a demand for $3000. Negotiations were continuing when Dr. Glade went on vacation, during which the fire occurred. Defendant municipality denies operating in a proprietary capacity, but obviously it was more interested in soaking this applicant than in soaking the subsequent fire.

When the fire broke out, plaintiff's manager had defendant town's fire department called. The caller told the answering fire department member the fire was in the utility house on plaintiff's premises and that a fire truck was needed. She was informed the truck would be right out. Relying on this assurance, no other fire departments were called. After defendant town's fire truck arrived at the scene the firemen watched the fire for about ten minutes, then departed without attempting to extinguish it. When they left, the fire was still confined to the boiler room. The Buffalo fire department, called after those firemen had gone, arrived to face a raging inferno.

The majority opinion states the department's captain in charge, Ehrecke, determined upon reaching the scene plaintiff was not a subscriber and ordered his men to depart. We find no support for this in the record. The motive of the department in answering the fire call and then withdrawing from the scene is not disclosed. There is ample proof the fire department knew before starting to plaintiff's property that plaintiff was not a member or subscriber.

In plaintiff's division I, and by incorporation of paragraphs in division II, plaintiff pled the implied agreement, arising out of the phone call, that defendants would use their best efforts to extinguish the blaze, and plaintiff's reliance thereon. In division II plaintiff further alleged defendants were negligent. Plaintiff alleged they willfully and wantonly lulled plaintiff's agents into a false sense of security by coming to the fire with the necessary men and equipment and then, with full knowledge no other fire department was present to fight the blaze, left the scene while the fire burned unchecked and spreading.

I. Defendants' first and only line of defense in this cause, adopted by trial court, is the following sentence from § 368.11, The Code:

"They [municipal corporations] may provide conditions upon which the fire department will answer calls outside the corporate limits and outside of the territorial jurisdiction and boundary limits of the state of Iowa, and the corporation shall have the same governmental immunity as when operating within the corporate limits."

I fail to see the applicability of this section to the facts in this case. The statute does not extend immunity in *all situations.* Obviously this one-sentence tandem authorization and immunity would permit the municipality to provide for extension of fire service by subscription to persons and corporations located outside the town or city limits. Fire service under such subscriptions or other systematic arrangements would be protected by the same governmental immunity as service within the city limits. This is the only logical interpretation the phrase "provide conditions" can be given.

But defendant town admits the case before us does not fall within the systematic arrangement it had provided for extending its fire service beyond its corporate limits: plaintiff had not paid the subscription demanded. Clearly, defendants' fire call here was not pursuant to any condition provided by the city. This case thus falls outside the immunity extended in the contemplated and usual circumstance.

Liability of defendant municipality in the proprietary vis-a-vis governmental capacity is therefore not affected by § 368.11. The corporate defendant itself asserts that the circumstances which would immunize a town from liability outside its limits did not exist in this case. Defendant town could not have been exercising a governmental function outside its town limits when in violation of its own conditions for extending its fire service in such area.

Still more difficult to accept is majority's premise that a governmental purpose is being served by a fire department which answers a fire call outside its corporate limits, makes no attempt to fight an extinguishable fire, and functions merely to postpone the arrival of another department. No authority cited by majority addresses itself to a similar factual situation.

Had defendant town fought the fire we would have speedily recognized a suit by it against plaintiff for the value of its services, on the basis of an implied contract arising out of the telephone call. Plaintiff's claim of implied contract or agreement on the part of defendants to fight the fire, and its reliance thereon, actually foundations its case in tort. Stripped of governmental immunity, defendants could

be found liable under well established tort principles:

"One who *undertakes,* gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) *the harm is suffered because of the other's reliance upon the undertaking.*" (emphasis added)—Restatement (Second) of Torts § 323, p. 135 (1965).

Even more pertinent is the comment found at page 137 of the same authority:

"Where * * * the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated."

Included in the cases recognizing liability for negligence in an undertaking once begun are Union Carbide & Carbon Corporation v. Stapleton, 237 F.2d 229 (6 Cir. 1956) (employer undertakes physical examination of employee and fails to disclose tubercular condition); United States v. Lawter, 219 F.2d 559 (5 Cir.1955) (plaintiff's decedent fell from coast guard helicopter during rescue operation); Perrone v. Pennsylvania R. Co., 136 F.2d 941 (2 Cir.1943) (plaintiff plumber injured through negligence of man furnished by defendant railroad to see that wires were de-energized when plaintiff was working near them); Conowingo Power Co. v. State of Maryland, 120 F.2d 870 (4 Cir. 1941) (failure of defendant to deaden power lines in area of plaintiff's decedent's work after indicating this would be done); Armiger et al. Estates v. United States, 339 F.2d 625, 168 Ct.Cl. 379 (1964) (Navy fails to obtain flight insurance forms for deceased Navy band members); Abresch v. Northwestern Bell Telephone Company, 246 Minn. 408, 75 N.W.2d 206 (1956) (failure to deliver to fire department plaintiff's message his building was burning, after undertaking such responsibility); Long v. Patterson, 198 Miss. 554, 22 So.2d 490 (1945) (failure to warn of traffic approaching the tractor plaintiff's decedent was operating without lights, after undertaking to so warn). See also Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303 (1966) (defendant alleged to have breached agreement to notify power company before undertaking work in dangerous area; plaintiff's damage action ex delicto for breach of duty founded on contract held proper).

No legal principle or procedural violation mandates the harsh result reached by majority. As a matter of public policy this court should not put a stamp of approval on the entrapment of plaintiff by defendant town's fire fighters who refused to fight.

II. Plaintiff's brief assigned error based on trial court's judgment dismissing the cause against defendant captain in charge:

"The Court erred in holding the acts of defendant Paul Ehrecke were performance of a governmental duty as a member of a volunteer fire department and as such he is entitled to be afforded the cloak of governmental immunity (R. p. 52, 11. 27–34)."

As governmental immunity is not available to the defendant town, it should not extend to the individual defendant.

But in any event, he could not claim the municipality's alleged immunity. In Anderson v. Calamus Community Sch. Dist., Clinton Co., 174 N.W.2d 643, 644 (Iowa

1970) we again recognized and applied the applicable rule:

"The general rule is thus stated in Mc-Quillin, Municipal Corporations, Vol. 4, pages 151, 152: 'A municipal employee who commits a wrongful or tortious act violates a duty which he owes to the one who is injured and is personally liable, even though he is then engaged in a governmental function, and even though his municipal employer may be exempt from liability under the doctrine of governmental immunity.' "

The majority opinion implies this rule is not followed because plaintiff did not articulate it. In the interests of administering justice between contending litigants, we frequently find it within our power to support a trial court's position which is right even though based on a wrong assigned reason. Barry v. Milbank Mutual Insurance Company, 188 N.W.2d 326 (Iowa 1971); Schnabel v. Vaughn, 258 Iowa 839, 140 N.W.2d 168 (1966). Surely this salutary concept should extend to support a litigant's position that is right, even if *all* the *right* reasons are not advanced.

I would reverse as to both defendants, and remand the cause for trial.

BECKER, J., joins in this dissent.